24 P.(2d) 738

**RAYNOLDS v. HINKLE, Com'r of Public Lands.**

No. 3762.

Supreme Court of New Mexico.

July 12, 1933.

Charles B. Barker, of Santa Fé, for appellant.

Frank H. Patton and John I. Hinkle, both of Santa Fé, for appellee.

BICKLEY, Justice.

Appellant filed his claim with the Commissioner of Public Lands for refund alleged to have been erroneously paid by him. The proceeding is under the provisions of chapter 99, Laws 1931.

Appellee, commissioner, indorsed his disapproval thereon and filed it in the district court of Santa Fé county, together with a statement of facts upon which his disapproval was based. Upon the record before the district court, a transcript of which is before us, the court sustained the commissioner.

It appears that Commissioner Field, on October 1, 1922, issued to Pope a grazing lease for 47,459.48 acres of state land for a term of five years from that date, and for a rental of 5 cents per acre per year. A down payment of one-fifth was made and the remainder was evidenced by four equal, joint, and several promissory notes of even date signed by the lessee and by two other persons satisfactory to the commissioner, due in one, two, three, and four years, respectively, as provided by section 132-114, Comp. St. 1929. Each of the notes bore 12 per cent. interest from *maturity*, and each contained a provision for acceleration of the due date upon default of the lease to the effect that, upon such default, all of the notes would become due and payable at once. Lessee Pope failed to pay the notes which fell due on October 1, 1923 and 1924, respectively. On December 9, 1924, Martinez filed two applications to lease the land covered by the Pope lease at a rental of 3 cents per acre.

Prior to the date of the applications by Martinez and subsequent to the date of the issuance of the Pope leases, the then commissioner, Baca, had issued a general order reducing the rental charge on all state grazing lands to the sum of 3 cents per acre. On May 9, 1923, and August 17, 1923, the then Attorney General rendered opinions addressed to the commissioner, Baca, to the effect that the commissioner had authority to reduce the rentals on state lands for grazing purposes to 3 cents per acre as to future leases, but that such reductions could not lawfully apply to existing leases or any portion thereof. Opinions Nos. 3705–3730.

At the time of considering the application of Martinez, the commissioner was confronted with the question of business policy as to whether to exercise his option to forfeit the Pope lease on account of his default or to look to the notes and the security of the lien upon the improvements placed upon the land by Pope. Sections 132-116, 132-121, Comp. St. 1929. Exercising what seemed to him a proper discretion, Commissioner Swope required that Martinez deposit with him $5,000 for the purpose of protecting the state against any loss by reason of the state releas-

ing its claim of lien against the improvements on the land in the amount of the unpaid Pope notes and interest thereon, after maturity. This deposit being made, two leases were made to Martinez, covering in the aggregate the land described in the Pope lease, on the basis of a rental of 3 cents per acre per annum, and thereafter on January 27, 1925, Commissioner Swope canceled the Pope lease and the said two leases issued in lieu thereof were delivered to Martinez. Thereafter, appellant purchased the interest of Pope in the land and improvements at a deed of trust foreclosure sale and secured a master's deed therefor. Appellant also purchased from Martinez one of said leases which covered 39,906.41 acres except one section, and on April 16, 1925, filed in the commissioner's office an assignment in due form, assigning said lease from Martinez to appellant. Commissioner Swope refused to approve the assignment until appellant should pay into his office the sum of $5,723.17, which was the amount the commissioner claims was owing on the Pope lease and notes secured by lien; the sum so demanded being made up of the following items:

"Due October 1, 1923, Note No. 1, Pope Lease, $2,387.97.

"Interest on same from October 1, 1923, to January 27, 1925, at 12 per cent. per annum, $387.09.

"Due from October 1, 1924, Note No. 2, Pope Lease, Interest at 12 per cent. per annum, to Jan. 27, 1925, $91.54.

"Difference in rentals between Pope Lease and the two Martinez leases, for the years commencing October 1, 1924, 1925 and 1926, respectively, each in the sum of $955.19, and the three aggregating $2,865.57."

After considerable negotiations between the appellant through his agents and attorneys, in which arguments pro and con, on the correctness of the commissioner's position were indulged, the appellant paid the sum demanded of him, protesting that it was an overpayment and unlawful demand. Whereupon the commissioner approved the assignment by Martinez to appellant. At the time of such payment, the Pope notes were held by the commissioner; they not having been passed into the hands of a purchaser.

The alleged erroneous payments for which refund is claimed by appellant is the difference between 5 cents per acre provided for in the two Pope rental notes, and the Martinez rental, amounting in the aggregate to $1,910.38, and interest on the Pope note No. 1 from October 1, 1923, to January 27, 1925, at 12 per cent. interest, $287.09, and interest on Pope note No. 2, from October 1, 1924, to January 27, 1925, at 12 per cent. interest, $91.54, a total amount of $2,389.01.

Appellant advances the proposition that the relationship between the state and a lessee of state lands is that of landlord and tenant, and governed by the general rules of law governing such relations. That under some circumstances, such general rules may be of assistance, we do not doubt. They

were invoked in American Mortgage Co. v. White, 34 N. M. 602, 287 P. 702, 703. One of these rules, says appellant, is that: "A re-entry for breach of covenant or condition precludes the right to recover rent which has not accrued before re-entry." 35 C. J. p. 1077.

██ The commissioner may have concluded that the contract was an entire one, the lease term being for the full term of five years, and that the down payment in advance and the acceptance of the four notes was equivalent to payment in advance. Section 132-121, Comp. St. 1929, would seem to lend color to such a conclusion because it is therein provided that in case of the nonpayment of rental notes, upon notice to lessee and other makers of the notes, the lessee fails to comply with the demand made in such notice, the other makers upon such rental notes, may pay same and have the rights of such lessee transferred to them, and also in case of default of payment of such notes, any creditor of the lessee may pay same and have the rights of any such lessee transferred to him. If the commissioner so viewed the matter, he would have found support for the view that where rent is payable in advance, the tenant is the one to suffer by reason of the nonapportionability of the rent; the lessor being, it seems, entitled to the rent for the whole period, though he re-enters the day after it falls due. See Tiffany, Landlord and Tenant, p. 1179. But it is not necessary that we make any declaration upon this interesting question. When Pope failed to pay a rental note when it fell due, all the notes became due. The commissioner was then in a situation to exercise his option to remain quiescent and look to the lessee and the two other makers of the notes for payment, leaving them to such recoupment as the law provides, and also look to the security of the lien on the improvements on the lands or on the other hand, become assertive, and cancel the lease. He did not cancel until he had arranged to protect the state's interest by requiring the applicant, Martinez, to step into the shoes of Pope and carry out, in effect, the terms of the Pope lease, by paying 5 cents per acre; he having been in effect advised by the Attorney General that to do otherwise would be unlawful. So much for the difference between the 5 cents per acre in the Pope lease, and the 3 cents per acre chargeable under the general order of Commissioner Baca. We find that as to such matter, the commissioner acted within his powers and as was his duty prudently to act.

██ Appellant also urges that the commissioner had no right to insert the acceleration clause in the notes. Appellant concedes that to do so has been the practice of long standing in the commissioner's office. It seems to be supported by common sense. The rent for the entire rental period is "payable cash in advance." The privilege is extended to the lessee to pay one-fifth in advance and to give four secured notes of *even date* for the remainder, due in one, two, three, and four years, respectively. In case lessee fails to pay any of the notes, or otherwise violates any of the terms of the lease, and whether the lease is forfeited or not, it would seem

to be an unnecessary burden upon the commissioner and contrary to the interest of the state to require that four actions be brought to enforce liens upon several, separate notes or otherwise to collect deferred payments evidenced by notes which are a substitution for "cash in advance." It is a provision not unusual in the business world. We said in American Mortgage Co. v. White, supra: "In State ex rel. Otto v. Field, 31 N. M. 120, 241 P. 1027, we decided that the jurisdiction of the commissioner over the public lands extended to all cases, except as otherwise specifically provided by law. Except as otherwise specifically limited by law, the power of the commissioner is very broad, and he is a sort of business manager of the lands under his control."

But appellant says that as the statute does not mention acceleration of payments of the several notes upon the default of one of them, the commissioner has no power to so provide. A similar contention was made in American Mortgage Co. v. White, supra. It was there argued that since the statute authorizing assignments of leases with the consent of the commissioner did not specifically authorize conditional assignments or assignments for collateral security, no power exists in the land commissioner to consent to or approve assignments of that character. The contention was held to be without merit.

■ What we have said as to the acceleration clause answers the contention that the statute being silent as to interest, the commissioner has no right to require that interest be paid even after maturity. Under

some circumstances the lessee must pay "cash in advance" or forego leasing the land —for instance, if he is unable to produce the two additional makers satisfactory to the commissioner to sign the notes with him. The lessee who gives notes with the prevailing rate of interest, and thus retains the use of his money, would be on a parity with the lessee who pays "cash in advance." He really has some the best of it by being required to pay interest only from *maturity* of the notes.

■ Appellant claims that the interest is usurious. Passing by the question as to whether the usury statutes are controlling upon the sovereign (the state), we find it stated that a note payable two years after date, without interest, to bear a high and otherwise prohibited rate from maturity until paid, is not usurious. Wight v. Shuck, Morris (Iowa) 425, affirmed Shuck v. Wight, 1 G. Greene (Iowa) 128. The court there said: "If the maker paid the money at the end of two years, no interest is to be paid at all. It would be contrary to all reason and justice to allow him to violate his agreement by not paying at that time, and set up a consequence of his own breach of the contract as a protection against all liability thereon." The court cited Chitty on Contracts, wherein it is said: "An agreement to pay double the sum borrowed, or any other penalty on the non-payment of the principal sum on a certain day, is not usurious because it is in the power of the borrower to discharge himself by paying the principal only, within the time limited." Many cases may be found announc-

ing similar principals and digested in American Digest, Decennial Edition, Usury, § 48. And see note in 7 Ann. Cas. page 489, where it is said: "The rule seems to be well settled that in the absence of statutory provisions to the contrary a contract for the payment of money is not usurious because it stipulates for the payment of more than the statutory rate of interest after maturity, since such an increased interest is regarded as a penalty which the debtor could avoid by punctual payment of the debt at maturity." Closely related to these principles, are those applied in American Investment Co. v. Lyons, 29 N. M. 1, 218 P. 183, where we decided:

"1. Where the interest charged upon a loan does not exceed what the interest thereon would total at the rate of 10 per cent. per annum, computed upon the basis of the time such loan is to extend, it is not usurious, even though the payments thereof are so divided that during the first 4 years of a 10-year loan each annual sum required exceeds 10 per cent. of the face of such loan.

"2. An intent to charge or exact interest at a prohibited rate is necessary to constitute usury."

It is apparent that it was not the intent of the state to earn interest by the forebearance, but to stimulate prompt payment, Mathematical computation readily discloses that had 10 per cent. per annum (the maximum legal rate) been charged over the entire time from the date of the note, October 1, 1922, to January 27, 1925, the date appellant says he was required to pay it, it would be in substantial excess of the amount appellant was required to pay at 12 per cent. after maturity.

 Besides all this, the appellant invaded a situation where the commissioner and Martinez were satisfied. If there was any abuse of discretion which was prejudicial to any one, it may be said to have been prejudicial to Martinez. He was not complaining. To have yielded to the importunities for an unqualified consent to the assignment of the lease, by Martinez to appellant, the commissioner would have been required to disturb the status quo by surrendering to Martinez the $5,000 he had on deposit in lieu of the lien against the improvements on the land, which lien the commissioner had theretofore relinquished. Such was the view of the commissioner as reflected by the correspondence. The original 1912 act, section 5196, Code 1915, provided for the assignment of leases with the consent of the commissioner. By amending chapter 73, Laws 1915, § 3 (Comp. St. 1929, § 132-119), it was provided: "Any assignment or relinquishment without the written consent of the commissioner shall be null and void."

Assuming that the commissioner's discretion thus reposed may not be exercised arbitrarily or capriciously, he who challenges its exercise in a particular case must show a clear right, and it may not be disturbed or controlled by the courts except in a plain case of abuse.

Viewing the whole matter, we are satisfied that the commissioner did not abuse his dis-

cretion in imposing the terms required of appellant as a condition precedent to approving the assignment from Martinez, and finding no error in the record, the judgment of the district court is affirmed, and it is so ordered.

WATSON, C. J., and SADLER, HUDSPETH, and ZINN, JJ., concur.