35 P.(2d) 297

**VESELY, Commissioner of Public Lands, v.**
**RANCH REALTY CO.**

No. 3990.

Supreme Court of New Mexico.

Aug. 17, 1934.

E. K. Neumann, Atty. Gen., and Carl B. Livingston, of Santa Fé, for appellant.

Francis C. Wilson, of Santa Fé, for appellee.

WATSON, Chief Justice.

Appellee held three purchase contracts of state lands, of several years standing, embracing a large acreage on which large sums had been paid, and on which lands valuable improvements had been made.

On November 15, 1932, Commissioner Hinkle canceled the contracts and simultaneously issued to appellee a lease for the same lands.

On May 24, 1933, Commissioner Vesely, having succeeded Commissioner Hinkle, cited appellee to show cause why the lease should not be canceled and the contracts re-

instated. The citation set forth·that the cancellation of the contracts "and issuance of lease * * * in their stead' was contrary to" N. M. Const. art. 4, § 32.

After hearing, the commissioner made his order canceling the lease and reinstating the contracts, from which an appeal was allowed to the district court.

The matter was heard in the district court' on the record of the proceeding in the land office, and some additional evidence. Judgment was rendered upholding the lease, and directing its reinstatement. From that judgment the present appeal of the commissioner was allowed.

█ The first point brought to our attention is that 30 days' notice was not given by Commissioner Hinkle prior to the action he took, as required by 1929 Comp. St. § 132-121. This omission is entirely immaterial in this connection. The notice requirement is obviously for the benefit of the lessee or other party whose rights it is proposed to terminate. He might complain. Why the state or a succeeding commissioner should be heard to object, we do not see.

█ It is next contended that the transaction was violative of N. M. Const. art. 4, § 32, prohibiting the exchange, transfer, remission, release, postponement, or diminution by the Legislature of any obligation or liability, held, owned by, or owing to the state, and generally prohibiting the extinguishment of any such obligation or liability except by payment thereof into the proper treasury, or by proper proceeding in court.

It requires some liberality of construction to find in these extinguished contracts an obligation or liability of the purchaser owed to the state. The state agreed to sell the land. The purchaser did not expressly agree to buy it. He agreed to make the payments promptly, it is true, and to pay the taxes. But the only remedy expressly reserved by the state for default was cancellation at the option of the commissioner, with retention of all payments of principal and interest, as liquidated damages.

However that may be, this constitutional provision must here be interpreted in the light of another, article 13, § 2, which vests the commissioner with the direction, control, care, and disposition of all public lands, under such regulations as may be provided by law. We have often pointed out the large powers thus conferred, notably in State ex rel. Otto v. Field, 31 N. M. 120, 241 P. 1027, and have referred to the commissioner as a business manager. American Mortgage Co. v. White, 34 N. M. 602, 287 P. 702.

It is not here questioned that the commissioner had statutory authority to make such contracts of sale, which themselves contemplate cancellation. The only "regulation provided by law" which the commissioner is said to have violated is that of notice before cancellation, here immaterial. We think that it is within the broad discretion of the commissioner to cancel contracts like these, retaining sums paid as damages. We see nothing in article 4, § 32, to prevent it.

█ Perhaps the most serious contention goes to the transaction as a whole. The con-

tracts were canceled at the instance of the purchaser and immediately replaced with a lease. The annual cost under the contracts greatly exceeded that under the lease. There was a corresponding loss in state or institutional revenue. It is urged that the spirit of Constitution and statute, representing the public policy of the state, has thus been violated.

We are not insensible that the state may suffer in losing an advantageous sale, and in having the land back on its hands to lease at the present minimum rental. How the commissioner can prevent this, under this form of contract, is not pointed out. So far as we are aware, all the purchaser need do, if he wishes the contract extinguished, is make default in payment.

There can be nothing to the contention then, unless it be that the commissioner should not issue a lease to a purchaser who has just defaulted and been canceled out, because it encourages defaults that would not otherwise occur. This is entirely proper for suggestion to the Legislature or to the commissioner, as matter of statutory regulation or land office rule. We do not see how the courts can declare or enforce such a policy.

As to this particular case, it should be said that there does not appear the slightest ground for questioning the propriety of Commissioner Hinkle's act. His successor evidently thought that it was illegal because done by agreement, rather than on notice. The purchaser represented to the commissioner that the burden of carrying the contracts had become too heavy to be borne under existing conditions, and that it must have relief or suffer a loss of its payments and improvements. It did suffer a large forfeiture to the state. The record does not disclose any untruth or bad faith in the representation. The commissioner was not unsympathetic of the plight of those whose purchase commitments have turned out to be unprofitable investments. Whether a different attitude in general or in this particular case would be or have been wiser is not for us to say. We find no illegality or impropriety.

The judgment will be affirmed, and the cause remanded. It is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.