38 P.(2d) 1112

**HARRY LEONARD, Inc., v. VESELY, Commissioner of Public Lands.**

No. 4014.

Supreme Court of New Mexico.

Dec. 11, 1934.

E. K. Neumann, Atty. Gen., and Carl B. Livingston, of Santa Fe, for appellant.

Hervey, Dow, Hill & Hinkle, of Roswell, for appellee.

WATSON, Chief Justice.

Appellee owns state oil and gas lease B—1266 issued October 14, 1932. It reserves a one-eighth royalty and an annual rental of 25 cents per acre. It has "a primary term until January 5, 1933, from the date hereof, and as long thereafter as oil and gas in paying quantities, or either of them is produced from said land by the lessee. * * *"

On August 4, 1933, the commissioner of public lands served upon the appellee, the lessee, a thirty-day cancellation notice. It recited that appellee was in default for refusal to comply with a demand for rental on the basis of 50 cents per acre.

This suit was commenced to vacate the ruling represented by said notice. The relief was awarded and the commissioner has appealed.

Two theories are here opposed to the judgment: First, that the rental was fixed at 25 cents per acre in violation of a statutory requirement that it be 50 cents per acre. Second, that if the 25-cent rental provision of the lease did not violate the statute, it did violate the Constitution, since it diminished an obligation or liability of appellee owing to the state. N. M. Const. art. 4, § 32.

Both theories require consideration of lease 711, which covered the same lands, was owned by appellee, and was surrendered or relin-

quished simultaneously with the issuance of lease B—1266, in supposed pursuance of the conversion provision of the act of 1931 (Laws 1931, c. 18, § 8).

Lease 711 was issued January 5, 1923. It reserved a 5-cent rental. Its term was "five years from the date hereof, subject to the renewals hereinafter provided for." It did not require the lessee to drill, though offering some inducements. There are expressions in paragraphs 5 and 6 suggesting the view that one year's rental having been paid in advance, it was wholly at the option of the lessee either to keep the lease alive by paying another year in advance, or to let it "cease and terminate and * * * be canceled."

Paragraph 8 expressly accorded the privilege to "surrender and cancel" the lease "at any time" and thus to "be relieved from all further obligation or liability." Paragraph 9 gave an option of a five-year renewal at a double rental, and otherwise on the same terms, if oil or gas in paying quantities was not being produced at the expiration of the original five years.

Paragraph 10 provided that if, at the expiration of the original five years, oil or gas was being produced in paying quantities, the lease should be renewed "for successive terms of five years each upon the same terms and conditions * * * as long as oil or gas in paying quantities * * * is produced," but at an annual rental of 50 cents per acre.

On January 5, 1928, production had not been accomplished, and there was a renewal at a 10-cent rental, pursuant to paragraph 9.

In June, 1931, a statute (Laws 1931, c. 18) went into effect, prescribing a new form of lease and, by section 8, authorizing conversion of any lease issued prior to March 12, 1929. This section 8 prescribes that "the primary term of the new lease * * * shall be the unexpired term of the original lease and as long thereafter as oil and gas in paying quantities, or either of them, is produced. * * *" The rental to be reserved is that prevailing in the district, but not less than that of the original lease.

On October 14, 1932, gas in paying quantities was being produced; the rental prevailing in that district was 25 cents; and lease 711, once renewed, had a few weeks yet to run at a 10-cent rental. On that date, lease 711 was relinquished and lease B—1266 issued.

It is conceded by appellant, we think, that if this conversion had been effected before gas in paying quantities was being produced, the transaction would have been within the statutory intent and constitutionally unobjectionable. But after the stage of production, he argues, a conversion of the lease in dimunition of the rent, and with other advantages to the lessee unnecessary to mention, was not contemplated by the statute nor permitted by the Constitution. That is to contend that section 8 of the statute (Laws 1931, c. 18) is not applicable to "any" lease, but only to those leaseholds upon which production has not eventuated, and to contend that paragraph 8 of lease 711 does not mean "at any time," but means prior to production.

Appellant points out that the lands here involved are embraced within the "restricted district" created by Laws 1931, c. 18, § 5, within which district leases can be obtained only by competitive bidding; and contends that the conversion provision was merely a device to enable the lessee to avoid an impending termination and to obtain a new term without competition, and that it was not intended to diminish the rental to which a producing lease was about to be subjected. While the former purpose may have been intended, that does not argue that the latter was not. The latter result might or might not occur. It is plainly within the provision, and we can find no sufficient reason for saying that it was not contemplated.

Of course, if by October 14, 1932, appellee had become legally obligated to the state to pay a rental of 10 cents per acre until January 5, 1933, and of 50 cents thereafter so long as gas in paying quantities should be produced, the statute is void in so far as it diminishes that obligation.

Here reliance is placed on paragraph 10 of lease 711. It is argued that this paragraph, to the exclusion of others, governed after oil or gas in paying quantities had been produced. It is no doubt true that it controlled to the exclusion of paragraph 9. It is not so readily to be concluded that it controlled to the exclusion of paragraph 8. The language of the latter paragraph is as applicable to a producing leasehold as to one on which no discovery had been made. It is suggested that no one would anticipate a willingness to surrender a producing lease, and that this ex-

plains the failure to limit the applicability of paragraph 8 to nonproducing leases. But it may be said with equal force that the state would be as willing to cancel, as the lessee would be reluctant to surrender, such a lease. Whatever the reason, paragraph 8 was made applicable to all leases. We cannot vary its meaning by mere speculation as to the state of mind of those who drafted it.

The situation on October 14, 1932, was this: Appellee had a lease, the renewed term of which would expire January 5, 1933. He could, and no doubt would, renew it on the latter date for a five-year term. In that event the rental would be 50 cents per acre. But the contract right existed to surrender it and to be thus "relieved of future obligations or liability." The Legislature, reshaping leasing policy, had accorded the right to convert any lease. It made no exception of a case like this. We must assume that it contemplated it.

In Vesely v. Ranch Realty Co., 38 N. M. 480, 35 P.(2d) 297, we suggested the difficulty of finding the obligation or liability of the vendee. The situation is analogous here. Lease 711, subject to surrender at any time, did not create an obligation on the part of the appellee.

The judgment should be affirmed and it is so ordered.

SADLER, HUDSPETH, and BICKLEY, JJ., concur.

ZINN, J., did not participate.