[No. 3351. March 26, 1930.]

AMERICAN MORTGAGE CO. v. WHITE et al.

[287 Pac. 702.]

S. G. Bratton, of Albuquerque, J. C. Gilbert and O. O. Askren, both of Roswell, and C. J. Roberts, of Santa Fe, for appellant.

Hurd & Crile, of Roswell, and Carl H. Gilbert, of Santa Fe, for appellee.

## OPINION OF THE COURT

BICKLEY, C. J.

J. C. Ballard was the owner and holder of a grazing lease on state lands designated as lease No. 15,342.

He assigned this lease conditionally, and as collateral security to the El Paso Cattle Loan Company, to secure his indebtedness to said company. The appellee has succeeded to the rights of said El Paso Cattle Loan Company.

The assignment purports to transfer to the assignee "all of the assignor's right, title and interest" in said lease, conditioned that, if Ballard paid his debt when due, the instrument should be null and void.

The assignment was consented to and approved in writing by the land commissioner.

Afterwards, J. C. Ballard assigned all of his "right, title, interest and claim" in said lease to appellant, Oscar White. The commissioner of public lands on October 1, 1926, pursuant to application made by White therefor, issued to said White lease No. G-237.

After application was made by Oscar White for the lease, and after approval of such application, but before it was issued to him, appellee appeared at the land office and presented an application for a renewal of the lease No. 15,342 to commence on the 1st day of October, 1926, upon the expiration of said lease No. 15,342. This application was made under a claim of a preference right to renewal in the applicant, by virtue of the provisions of the collateral security contract, and also as a creditor of J. C. Ballard, independently thereof.

The commissioner refused to recognize that the applicant, American Mortgage Company, had any rights which would defeat the application of Oscar White, also claiming a preference right, and refused to accept and permit to be filed the application of appellee for renewal of the Ballard lease.

A contest was thereafter instituted in the land office by appellee, against the lease issued to Oscar White.

The contest was decided in the land office in favor of appellee. On appeal to the district court, a like decision was rendered in favor of appellee.

The judgment of the district court was that the commissioner of public lands should forthwith cancel the Oscar White lease and issue to the appéllee a lease to the lands in question.

Appellant quotes section 5196, as amended by section 3 of chapter 73, Laws 1915, as follows:

"With the consent of the Commissioner any lessee may assign all his right, title and interest in his lease, or relinquish the same to the State, whereupon his lease shall be cancelled. Any assignment or relinquishment without the written consent of the Commissioner shall be null and void."

He argues that as this section does not specifically authorize conditional assignments, or assignments for collateral security, no power exists in the land commissioner to consent to or approve assignments of such character.

In State ex rel. Otto v. Field, 31 N. M. 120, 241 P. 1027, we decided that the jurisdiction of the commissioner over the public lands extended to all cases, except as otherwise specifically provided by law. Except as otherwise specifically limited by law, the power of the commissioner is very broad, and he is a sort of business manager of the lands under his control. That the approval of the commissioner of an assignment for collateral security of a lease on state lands is not contrary to public policy is indicated by chapter 8, Laws 1921, which amended section 5198 of the 1915 Code, and which provides that, in default of payment of rental notes, any creditor of the lessee may pay same, and have the rights of such lessee transferred to him.

We do not believe that the Legislature made this provision for the purpose of aiding the creditors of lessees of state lands. The purpose, doubtless, was to keep the leases operative as long as possible, so that revenue therefrom might be uninterrupted. If the legislative policy was to encourage creditors to keep the lease alive by taking it over, under such circumstances, the same result would be accomplished by permitting the pledgee of the lease or

his successor to become, under proper proceedings, the owner thereof.

In the absence of statutory or contractual restrictions to the contrary, a lessee for years, may, without the lessor's consent or an express provision in the lease, either assign, sublet, or mortgage or otherwise incumber the term granted by the lease. But he cannot, of course, incumber the reversion by his contracts. 35 C. J., Landlord and Tenant, § 54. Such a transaction as between landlord and tenant being not unusual, we are of opinion that the commissioner has the power to consent thereto. This point is ruled against appellant.

Appellant challenges the transaction further upon the ground that it is contrary to the following provision of section 10 of the Enabling Act:

"No mortgage or other incumbrance of the said lands, or any thereof, shall be valid in favor of any person or for any purpose or under any circumstances whatsoever."

The transaction in the case at bar did not attempt to incumber the reversion.

The state's interest in the land is not by the acts of the parties, mortgaged or incumbered.

Terms for years, of grazing lands, as in the case at bar, are chattels real, falling within the classification of personal property and governed by the rules applicable to other kinds of personal property. 35 C. J., Landlord and Tenant, § 47.

"The interest of a tenant in a term for years is deemed at common law personal property as distinguished from real estate, however long its duration in years."

16 R. C. L., Landlord and Tenant, § 3.

"Except so far as they have been modified by statute, a leasehold interest, though a chattel real, is personal estate and subject to the rules governing that species of property."

Thompson on Real Property, § 958.

Our attention has not been called to any statute modifying the common-law rules in this regard.

We are therefore convinced that the transaction in the case at bar is not in violation of the provision of the Enabling Act heretofore quoted.

It follows also that, even assuming that the leasehold was the community property of Ballard and his wife, the assignment executed by Ballard alone does not run counter to the provisions of section 68—403, 1929 Comp., as follows:

"The husband and wife must join in all deeds and mortgages affecting real estate * * * any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of not effect."

"An assignment of a term for years is governed generally by the rules applicable to the sale of personal property."

16 R. C. L., Landlord and Tenant, § 325.

Appellee contends, under the provisions of section 132-121, 1929 Comp. (L. 1921, c. 8, § 1, amending Code 1915 § 5198), and the facts in the case, it was entitled to have transferred to it the rights of Ballard in the lease. The statute is as follows:

"The violation of any of the terms, covenants or conditions of any lease or instrument in writing executed by the commissioner covering state lands, or the nonpayment by any lessee of such lands of rental notes, except when lien therefor is enforced as hereinbefore provided in this chapter, shall, at the option of the commissioner work a forfeiture of any such lease or instrument in writing after thirty days' notice to the lessee by registered mail, addressed to his last known post office address of record in the state land office, and to the other makers, if any, upon such rental notes; Provided, if within said thirty days the lessee shall fail to comply with demand made in any such notice, after the expiration of said period of time the other makers upon any such rental note may pay same and have the rights of any such lessee transferred to them. In default of payment of any such note or notes as aforesaid, any creditor of the lessee may pay same and have the rights of any such lessee transferred to him."

From the record it appears that Ballard became delinquent in the payment of his rentals under the lease; that the commissioner called upon the appellee, and upon C. L. Ballard and E. L. Medler, as sureties upon the rental notes of J. C. Ballard, to pay the delinquency. The said sureties induced the appellee to pay said rental notes, and, in consideration of the promise to be saved harmless, executed and delivered in favor of appellee an assignment of all

priority rights that they might be entitled to with respect to the lease No. 15,342. Upon payment of the delinquent rentals, the appellee made application for a new lease in its name, which application was protested by A. H. Pruitt, claiming preference right to lease under assignment of the J. C. Ballard lease. This situation gave rise to a contest in the land office between appellee on one side and J. C. Ballard and A. H. Pruitt on the other. The decision of the land commissioner recites that in his opinion, the American Mortgage Company (appellee) being a creditor of J. C. Ballard and having paid the rental delinquencies of said Ballard, its rights under chapter 8, Laws 1921 (section 132-121, 1929 Comp.), were superior to the rights of said Pruitt, and that the lease should be transferred to appellee. The commissioner decided that the American Mortgage Company had no standing by virtue of its collateral security contract.

An appeal was taken to the district court of Chaves county and became cause No. 5958. There the court decreed that Pruitt had no right, title, or interest in and to the lease involved (No. 15,342). The court reached this decision by a process of reasoning different from the commissioner. The court relied upon the assignment by Ballard to the El Paso Cattle Loan Company for collateral security. The court made the following observations in an opinion filed in that case as to section 5198, Code 1915, as amended by chapter 8 Laws 1921:

"By section 5198, Code of 1915, as amended by chapter 8, Laws of 1921, a provision is made for the manner of cancelling grazing leases. Section 5198 provides generally that a failure to pay the rent, when due, is a sufficient cause for declaring a lease forfeited; but the manner of forfeiting the lease is provided by section 5198, as amended by chapter 8 of the Laws of 1921. Forfeiture can be made only after thirty days notice to the lessee, addressed to his last known post office address, by registered letter, and to the other makers, if any, upon his rental notes. If the lessee shall fail to comply with the demand made in this notice, then, after the expiration of that period of time, the other makers are permitted to pay the notes and have the rights of the lessee transferred to them. In default of the payment of any such note or notes by either the maker or the sureties, any creditor is permitted to pay the same and have the rights of any such lessee transferred to him. It is quite certain that the thirty days notice must be given after the default is made; and, also, it must be given by registered letter. It is in the nature of process and the giving of a notice not in accordance with the law would be in-

effective for the purpose of cancelling the lease. It thus appears that no proper notice has been given to Ballard authorizing a cancellation of the lease, and it can only be done in this case under the terms of the so-called collateral assignment contract, unless it be done as provided by the statute mentioned."

We do not know what evidence was before the court in that proceeding, but we have not found any evidence in the present record that demand was made by registered mail upon J. C. Ballard for the payment of the rentals delinquent. There is no finding of fact that a demand was made in that manner. R. F. Ballard testified that in November, 1923 (at time it is claimed the demand was made), J. C. Ballard was in California, and that he (the witness) was looking after the business of J. C. Ballard, and that no such demand or notice was received. J. C. Ballard testified that he did not remember ever having received the notice and demand in question or any like notice from the commissioner.

We doubt if what was decided in cause No. 5958 has any force in cause No. 6813 (the present case) in the same court, yet the proceedings in the first case were put in evidence in the present one by appellee, and the judgment appealed from and the findings of the court make frequent reference to and relied upon what transpired in the earlier proceedings. In fact, one of the errors appellant properly complains of is that finding of fact No. 28, to the effect that in the earlier case it was adjudged and decreed that the plaintiff therein (appellee) was entitled to said lease No. 15,342 under and by virtue of its assignment thereof, by reason of the default of said Ballard in the payment of the indebtedness as security for which said lease was assigned, is not supported by substantial evidence. At any rate, appellee knew the court's views as to the necessity of showing service of the notice by registered mail, and doubtless would have brought forward the best proof possible on that point in the trial of the present case.

We believe that there is no satisfactory proof in the present case that a demand was made upon J. C. Ballard for delinquent rentals in the manner provided by the statute. We are also of the opinion that the trial court was

correct in his observations concerning the necessity of a strict compliance with the statute before any rights of a creditor of a lessee may arise thereunder, under chapter 8, Laws 1921. It is very frequently said that forfeitures are not favored, and that he who claims it must show a clear right.

"A party relying upon the service of a notice by mail must show a strict compliance with the requirements of the statute." 29 Cyc. 1123.

A consideration of the rights of the respective parties leads us to the conclusion that the transaction disclosed in the case at bar is a mortgage of personal property.

"In New Mexico the lien theory of mortgages prevails."

Armijo v. Pettit, 32 N. M. 469, 259 P. 620, 623, 61 A. L. R. 767. See Mathieu v. Roberts, 31 N. M. 469, 247 P. 1066; Enfield v. Stewart, 24 N. M. 472, 174 P. 428, 2 A. L. R. 196; Stearns-Roger Mfg. Co. v. Aztec G. M. & M. Co., 14 N. M. 300, 93 P. 706.

█ █ Under this theory the general property in the thing mortgaged remains in the mortgagor, and only a special property vests in the mortgagee. The mortgagee acquires no interest in the property, except as a security for his debt. The general property in the thing mortgaged remains in the mortgagor after, as well as before, default. The default of the mortgagor to pay his debt at maturity in no way affects the nature of the mortgagee's rights concerning the property mortgaged, except that he then becomes entitled to proceed to make the security available in the manner prescribed by law or by the terms of the contract. The provision in the assignment of the lease for collateral security, to the effect that, in case of a failure of lessee to pay his debt to the assignee, the commissioner of public lands should execute and deliver to the assignee a transfer assignment "absolutely" of said lease or to issue a new lease in lieu of said lease No. 15,342, does not change the situation, because, in so far as such an arrangement may be an attempt to vest the absolute title to the lease in the assignee, prior to foreclosure, it is void.

"The right and equity of a mortgagor to redeem * * * was regarded as an inseparable incident to a mortgage. Courts of equity, applying the doctrine, 'once a mortgage, always a mortgage,' refused to permit the parties to a transaction intended as a mortgage to give the transaction any other character. And so deeds absolute in form, if intended as mortgages, were construed as such; giving the grantor a right to redeem. Furthermore, the mortgagor cannot, by any agreement contemporaneous with the transfer of his property, however explicit or forceful, bind himself not to assert his right and equity to redeem. This principle renders ineffectual the deposit of a deed in escrow by the mortgagor, at the time he gives the mortgage, for delivery to the mortgagee if he fails to meet his obligation promptly; otherwise the rule could be readily evaded."

We do not doubt that the same equitable principles apply to mortgages of personal property. See Alcolea v. Smith, 150 La. 482, 99 So. 769, 24 A. L. R. 815, and annotation thereto at page 822 treating

"Validity of agreement clogging equity of redemption from mortgage or pledge of personal property."

It appears to us that the appellee has a lien upon the leasehold; that J. C. Ballard, prior to foreclosure thereof had a general property in the lease assigned as collateral security and could assign his equity therein to Oscar White, and that said White, having knowledge of the interest of the appellee at the time of taking his assignment, holds whatever interest Ballard had to assign to him subject to the lien and rights of the appellee.

For the reasons stated, the judgment of the trial court is therefore reversed, and the cause remanded, with instructions to proceed in accordance with this opinion, and it is so ordered.

WATSON and CATRON, JJ., concur.

PARKER and SIMMS, JJ., did not participate.