273 P.2d 367

SWAYZE v. BARTLETT.

No. 5616.

Supreme Court of New Mexico.

Jan. 30, 1954.

George L. Reese, Sr., Roswell, George L. Reese, Jr., Carlsbad, for appellant.

Donald Brown, Roswell, for appellee.

ROGERS, District Judge.

This is an appeal from a final judgment of the District Court of Chaves County in probate proceedings originating in the probate court of that county, but thereafter removed under the provisions of Sec. 16–419, N.M.S.A.1941. The appellant was administratrix below, and appellee, the objector. Inasmuch as a limited cross appeal has been filed, parties will be referred to herein as "administratrix," and "objector."

Edward F. Bartlett died intestate on June 16, 1948, in Chaves County, New Mexico, leaving as his survivors the following: Alida E. Bartlett (objector), his widow; Blanche Bartlett Swayze (administratrix), a daughter; Edna Bartlett Kimmons, a daughter; and two sons, Ralph Bartlett and Walter F. Bartlett.

Decedent and objector were married in Illinois in 1902, moving to New Mexico in 1906. Between the inception of their New Mexico residence and the year 1948, the parties acquired in the name of decedent, in fee simple, some 225 acres of irrigated land, and some 160 acres of land in decedent's name by virtue of a lease from the Commissioner of Public Lands of the Territory of New Mexico. This lease has been continuously renewed by the commissioner since then, in the name of Edward F. Bartlett or Rudolph Caughey, a creditor of decedent, and presently in the name of Blanche B. Swayze, as administratrix.

This couple remained together with apparent harmony, so far as the record reveals, operating the real estate as an irrigated farm until 1928. In that year the wife, Alida E. Bartlett, deemed it imperative for her to make an extended visit to Illinois, where she remained until about 1932, at which time a state of incompatibility developed between the parties, and on May 26, 1934, the wife, before a notary public in Kankakee County, Illinois, executed, in favor of her husband, a quitclaim deed covering all of the farm lands in Chaves County, New Mexico, together with a bill of sale to all of the livestock, farm equipment and chattel property located thereon, but no release or relinquishment of her interest in the agricultural lease was ever executed.

In December, 1942, Mrs. Bartlett returned to the State of New Mexico, and remained at the abode of her husband until March, 1943, but the parties were unable to adjust or reconcile their differences, and on March 4, 1943, the husband and wife called at the office of Mr. G. L. Reese, Sr., who was then a licensed and practicing attorney in the City of Roswell, where an instrument designated as "Separation Agreement and Contract Settling Property Rights" was prepared for execution by the parties. After this instrument was prepared, but before execution, the attorney suggested that the wife should employ an attorney to advise her, but the suggestion was declined. The instrument was then executed by both parties, and the amount of $1,202 was subsequently paid by the husband to the wife. Shortly after the execution of the property settlement, the wife returned to the State of Illinois, until in December, 1946, when she returned of her own volition, to the abode of the husband, and within a few days after her arrival in Chaves County, New Mexico, they again cohabited as husband and wife, and continued to live together as husband and wife, continuously, from December, 1946 until the date of the decedent's death in June, 1948.

The administratrix, in her final report, among other things, recited the execution of the separation agreement above referred to, claimed that objector had relinquished any

claim in and to the estate of Edward F. Bartlett, and concluded that the objector could not be considered as an heir of the decedent. Objector filed her objections to this final report, and an extended hearing was had before the trial court, and as a result of same, a final decree was entered in this cause.

This decree determined that the court had jurisdiction of all parties to the cause; that it had jurisdiction of the subject matter, including personal property in the hands of the administratrix; and that it had power to determine the heirship of the decedent, Edward F. Bartlett; the persons who were entitled to share in the personal property of the estate, and to determine the respective interest of such persons entitled thereto. The court then decreed that objector and five children of the decedent were his sole heirs at law, and that the widow objector was entitled to one-half, and each child to a one-tenth interest in and to all of the personal property of which decedent died intestate.

The decree further provided that the surviving widow had theretofore waived her right of inheritance, and was therefore not entitled to share in the distribution of the personal property of the estate, except in her capacity as community survivor. From this decree the administratrix has appealed. The objector has cross-appealed, alleging aggrievement to the judgment, limiting her recovery of personal property to an undivided one-half interest in lieu of the undivided five-eighths interest to which she believed herself entitled.

We are met at the threshold of this cause by a two-pronged attack levied against the jurisdiction of the trial court to hear and determine the vital issues presented and incorporated in said final decree. The first ground is two-fold in nature, that the heirs at law of decedent were necessary and indispensable parties to the proceeding, and (2), that the lands covered by the agricultural lease belonged to the State of New Mexico. Hence, the State is an indispensable party, and the court was without jurisdiction to determine the ownership of the lease. The second ground challenges the jurisdiction of the district court, sitting as a probate court on removal proceedings, to determine and adjudicate the separation agreement, and the muniments of title given by objector to decedent.

We are of the opinion that the administratrix' first theory is untenable, under the doctrines announced in our previous opinions in Sullivan v. Albuquerque Nat. Trust & Savings Bank, 1947, 51 N.M. 456, 188 P.2d 169 and Rubalcava v. Garst, 1952, 56 N.M. 647, 248 P.2d 207. Inasmuch as the heirs at law are not indispensable parties insofar as concerns personal property, we conclude the court had jurisdiction to try

the issues presented insofar as those parties are concerned.

A more serious challenge to the jurisdiction of the lower court appears from the fact that the Commissioner of Public Lands of the State of New Mexico was not joined as a party litigant in the proceedings. Section 8-863, N.M.S.A.1941, provides, in part, as follows:

"Any person * * * claiming any right, title, interest * * *, in or to any state lands, covered by any lease * * * executed by the commissioner, shall have the right to initiate a contest before the commissioner who shall have the power to hear and determine same. * * *"

The various functions of the commissioner of public lands have received the consideration of this Court in a number of cases, the most important of which, for the purposes of this case, are: State ex rel. Evans v. Field, 1921, 27 N.M. 384, 201 P. 1059; American Trust & Sav. Bank of Albuquerque v. Scobee, 1924, 29 N.M. 436, 224 P. 788; Ellison v. Ellison, 1944, 48 N.M. 80, 146 P.2d 173; Burguete v. Del Curto, 1945, 49 N.M. 292, 163 P.2d 257.

From these cases, as crystallized in Justice Mabry's opinion in the Del Curto case, has evolved a rule that a district court does not have jurisdiction to try and determine the rights of private litigants to state land, including leases thereof, if the Commissioner of Public Lands is not a party to such proceedings.

We have decided to reconsider the announcements made in the cases hereinabove mentioned, to re-evaluate the quoted statute, and if necessary, to modify the applicability of that law to certain litigation between private individuals. We are, of course, mindful of the seriousness of modifying previous decisions of this Court, and are hesitant to do so, but when logic and better reason so require, we will not fail to announce what, in view of mature reconsideration, appears to be the better rule. A review of the above cases now becomes advisable. In this regard, the case of State ex rel. Evans v. Field, supra, should be reviewed.

This case, decided in 1921, deals with a contract for the sale of public lands to a private citizen. The contract recited that the land was being purchased for grazing and agricultural purposes only; and any minerals thereafter found thereon, were reserved to the fund or institution to which the land belonged. The relator, desiring to accelerate the installment payment provision in the agreement, tendered the entire balance due, and demanded a deed of the commissioner, conveying the land in fee simple, the demand being refused by the commissioner on the ground that minerals were reserved to the state under the contract; and action of mandamus was brought

against the commissioner. Justice Parker, speaking for the Court, held that mandamus will not lie against the commissioner, because it is, in effect, an action against the State, and that no sovereign state can be sued in its courts, or any other, without its consent.

Thus we find that the commissioner of public lands is not amenable to suit involving claims by private litigants, and may plead a sovereign's immunity from litigation if he so desires. We therefore are confronted with the proposition that the so-called "indispensable party" is immune from process.

We wish to point out, however, that under the issue in the Field case, the commissioner was actually an indispensable party, inasmuch as reservations of minerals is a matter peculiarly within the commissioner's province.

The above-quoted statute first appears in our reports in Dallas v. Swigart, 1918, 24 N.M. 1, 172 P. 416. It was not subjected to construction in that case, but is merely mentioned as the basis for the district court's jurisdiction on appeal, inasmuch as a ruling on a hearing before the commissioner by two contestants was appealed to the district court.

This statute was suggested as a means of securing a definition of the powers of the commissioner of public lands in re- serving, as he did in the Field case, supra, mineral rights to certain state lands, in the American Trust & Sav. Bank of Albu- querque v. Scobee, supra. In that case we indicated that an examination of the instant statute and following sections discloses that the scope of enquiry therein authorized is very broad, and would seem to cover almost any kind of an enquiry as to the respective rights of the claimants under contracts or leases emanating from the office of the commissioner. As in the Field case, we are of the opinion that the questions of reser- vations in a lease or contract are matters where the presence of the commissioner in the case is indispensable.

A state lease was involved in a divorce action in Ellison v. Ellison, supra, decided in 1944. Whether, in the Ellison case the leased property was community, or the separate property of the wife, was not de- cided, inasmuch as the lease had by its terms, expired and was before the commis- sioner for renewal. The Court went fur- ther, however, and stated that inasmuch as the commissioner was not a party to the ac- tion, nor had jurisdiction been invoked in the first instance, the Supreme Court was unable to see where the district court had jurisdiction to determine any rights, as be- tween the parties, on the question of a re- newal or a new lease of the state land in question. Again we state that questions of renewals or of a new lease of state lands are peculiarly within the province of the

commissioner, and in a case involving such question, the commissioner is an indispensable party.

Appellant strongly relies on the case of Burguete v. Del Curto, supra, as a bar to the jurisdiction of the trial court to determine the interests of contesting litigants in and to a state lease. It is upon the question of the soundness of the Del Curto decision that we must now focalize our attention.

In this case one Juan Burguete sought to establish an interest in the lease to a section of the state school land in Guadalupe County, and to enjoin defendant from depriving the plaintiff of access thereto, and water and improvements thereon. Burguete at one time had been co-lessee with one Perez on a lease of that land, but had relinquished his interest therein, and a subsequent lease had been issued to Perez, alone. Thereafter, Perez and Burguete had shared the lease under an agreement between them. Perez sold his fee land to the defendant Del Curto, the latter securing a new lease to the school land in his name. Burguete continued to pay his share of taxes, upkeep and rentals to Del Curto for a time, but prior to suit, Del Curto denied plaintiff access to the premises. Our Court, through Justice Mabry, held in effect, that the jurisdiction of a court of equity could not be invoked in a suit affecting the rights of the state in state school lands, unless the commissioner

of public lands, a necessary and indispensable party to such a suit, is made a party to the litigation.

We wish to point out that in the Del Curto case no actual duty or function of the commissioner was in any way involved. Here no question arises as to reservations of rights, as in the Field or Scobee cases. No question appears as to the terms of the lease, or a default in the payment of rentals, the eligibility of the plaintiff to be a lessee or, indeed, any question which would logically invoke the powers of the commissioner in any way. The inapplicability of a hearing authorized by Sec. 8–863, supra, is at once apparent. The Court apparently, in the Del Curto case, ignored the doctrine of State ex rel. Evans v. Field, supra, in that in the Del Curto case [49 N.M. 292, 163 P. 2d 260] it specifically stated that "whether the Commissioner could be made a party to such suit without his consent, [the Court] * * * need not and do not decide." In conclusion as to the Del Curto case, we are of the opinion that the Court therein made an erroneous application of the doctrine of indispensable parties.

Accordingly, we state what we consider to be the true rule as to the necessity of the commissioner of public lands, as a party to litigation between private parties involving state lands: If the controversy involves a question concerning the legality of a state lease, the eligibility of the lessee

thereunder, the matter of performance of the lease, reservations, if any, in the lease, or a matter of public policy requiring passage thereon by the commissioner of public lands, then the commissioner is not only a necessary party, but is an indispensable party. If, on the other hand, none of the above questions are involved, a district court should have jurisdiction to adjudicate the issues as between private litigants, liberally allowing, however, intervention to the commissioner, if any public land question is or could be involved in the case.

■ The facts of this case, fitting as they do the last category, the commissioner is not an indispensable party, and the appellant's contention in this regard is not sound.

Having decided the contentions of absence of indispensable parties adversely to appellant, we now turn to the controlling question of the case, namely, that of the jurisdiction of the district court, sitting as a probate court on removal, to determine and adjudicate the separation and property agreements, and the muniments of title between the objector widow, and the decedent. The question is stated with such precision by appellant in her brief, that we will quote the heading of the second point thereof:

"The District Court had no jurisdiction to try or determine the issues in said cause, raised by the pleadings, which involves the construction and determination of a Separation Agreement and Contract Settling Property Rights between the Decedent and Alida E. Bartlett, and other written instruments wherein the title to real estate is in dispute and drawn in question."

The administratrix, under this point, urges with considerable vigor, the announcements contained in the case of McCann v. McCann, 46 N.M. 406, 129 P.2d 646. This case was decided by the Supreme Court of New Mexico in 1942, and dealt with a probate cause originally filed in the Probate Court of Eddy County and removed, as was the case at bar, to the district court. From a judgment of the district court adjudicating one Ada Lucille McCann to be the sole surviving heir at law of John D. McCann, deceased, and denying the claims of the plaintiffs as heirs, construing a contract between the parties, and quieting title in the defendant, the plaintiffs appealed.

In the district court and through most of the proceedings in the Supreme Court, the parties assumed jurisdiction in the trial court. The query relative to jurisdiction was first propounded by the Supreme Court, itself, and was, in substance, whether the probate court or the district court upon removal, has jurisdiction to determine a dispute where title to real estate may be directly or indirectly involved, and wheth-

er there be jurisdiction under the circumstances, to adjudicate heirship, where the determination of heirship is only an incidental feature of the case, and when the primary object of the suit is to construe the contract in question.

■ So far as the state lease in question is concerned, it is a chattel and not real property. See American Mortgage Co. v. White, 1930, 34 N.M. 602, 287 P. 702. Our attention is therefore directed to that part of the question presented in the McCann case, dealing with a case where the primary object of a suit, or one of the determining issues thereof, is a construction of a contract dealing with property, including the state lease.

■ In our opinion in the McCann case, we unequivocally stated that in a suit involving primarily the adjudication of ownership of property, where the question turns squarely upon an interpretation or construction of the property settlement contract, neither the probate court nor a district court sitting on removal proceedings therefrom, has jurisdiction to adjudicate such contract and determine its rights thereunder. We believe that this rule is a correct one, and should not be disturbed.

■ Appellee seeks to mitigate the effect of the McCann decision by pointing out and quoting from a 1949 amendment to Sec. 16–312, N.M.S.A.1941. That section deals with concurrent jurisdiction of district courts of causes within the scope of the probate court, and the statute prior to the 1949 amendment, and in effect at the time of the McCann decision, and at the time of the inception of probate proceedings in the case at bar, provided, in effect, that in addition to their exercising jurisdiction, the district courts shall have concurrent jurisdiction with the probate courts, as to all matters heretofore within the exclusive jurisdiction of the probate courts. By the 1949 amendment, being Ch. 96, Laws of 1949, the following sentence was added to the section:

"The said district courts, as a part of their general jurisdiction, shall have power to determine heirship in any probate or administration proceeding, whether such proceeding originates in said court or has been transferred thereto under the provisions of the various statutes relating to such matters."

Appellee-objector cannot avail herself of the provisions of the amendment to Sec. 16–312, supra, inasmuch as decedent died on June 16, 1948, and the probate proceedings were instituted on June 22, 1948, some considerable period of time before the enactment of the amendment. See Art. IV, sec. 34, N.M.Const. We do not herein pass upon, nor need we pass upon, what the effect would have been had Ch. 96, Laws of

1949, been in effect at the inception of this action. At the same time we would like to point out that the amendment does not, in its terms, include such jurisdiction as is sought to be here invoked by appellee.

Appellee would likewise seek support from the September 20, 1949 amendment to Art. VI, sec. 23 of the New Mexico Constitution. This constitutional amendment, as in the case of the 1949 legislative enactment, was effective after the date of the probate proceedings herein, and is not available in behalf of the appellee. We likewise refuse to comment on the applicability of the statutory amendment to a situation such as is presented in the case at bar.

Deciding as we do, that the district court, sitting as a probate court on removal, was restricted to the powers of the probate court in these proceedings, and deciding that the court exceeded its jurisdiction in attempting to try and determine the effect of the separation and property settlement, and the deeds given by objector to decedent, the cause is reversed, with instructions to set aside the judgment and decree, and to permit the parties to proceed hereafter as they may elect, and in a manner not inconsistent with this opinion; and

It is so ordered.

SADLER, COMPTON, LUJAN and SEYMOUR, JJ., concur.

McGHEE, C. J., not participating.