924 P.2d 1352

J Casper HEIMANN, Petitioner--
Appellant,

v.

Johnann ADEE, Bobby Adee, and Farmers
Home Administration, an agency of the
United States Government, Respondents,

Craig L. Reeves, First National Bank in
Clayton, Robert O. Beck, Beck & Coo-
per, Ray A. Snead, Jr., Claire W. Snead,
Ray A. Snead, III, Will Snead, Tom M.
Hills and Ann B. Hills, d/b/a Alamo
Ranch, Respondents--Appellees,

and

State of New Mexico, Commissioner
of Public Lands, Respondent--
Amicus Curiae.

No. 22903.

Supreme Court of New Mexico.

Sept. 23, 1996.

**342**

Kastler & Kamm, P.C., Paul A. Kastler and Steven L. McConnell, Raton, for Appellant.

Beck & Cooper, Robert O. Beck, Clayton, for Appellees.

Jan Unna, Stephen G. Hughes, Special Assistant Attorneys General, Santa Fe, for Amicus Curiae Commissioner of Public Lands.

## OPINION

MINZNER, Justice.

Appellant J Casper Heimann appeals from the district court's affirmance of an administrative decision of the Commissioner of Public Lands (the Commissioner) and dismissal of his declaratory judgment action. He contends he had an interest as a result of a sublease in a state grazing lease sold at a sheriff's sale and assigned by the Commissioner to the purchaser at that sale. This appeal requires us to consider initially whether a sheriff's sale ordered by a district court to enforce its judgment is subject to collateral attack in another district court.

We determine that NMSA 1978, Section 39–4–1 (Repl.Pamp.1991) precludes such an attack. We also conclude that the Commissioner was not an indispensable party to either the sheriff's sale or the underlying proceeding. Finally, we conclude that although the Commissioner had authority to resolve the question of whether Heimann's interest, if any, survived the sheriff's sale, we hold that the trial court did not err in affirming the Commissioner's administrative decision. Our disposition of the foregoing issues resolves all issues raised by the declaratory judgment action. Therefore, we affirm.

## I. FACTS AND PROCEDURE

In 1970 ranchers Johann and Bobby Adee and the Commissioner entered into GS–1239, a state grazing lease encompassing some 6,275 acres in Harding County. The parties have renewed this lease several times, most recently in 1992.

In July 1993 Appellee First National Bank in Clayton obtained a $2.4 million judgment against the Adees in *Reeves v. Adee,* Union County District Court Cause No. 93–6–CV (*Reeves*). Thereafter, the Union County District Court issued a writ of execution, and the Harding County Sheriff levied against the Adees' leasehold interest in GS–1239. Following advertisement in the local newspaper, the sheriff sold the leasehold to Appellees Ray A. Snead, Jr., Claire W. Snead, Ray A. Snead, III, Will Snead, Tom M. Hills, and Ann B. Hills d/b/a Alamo Ranch, at a public auction held on November 16, 1993 (Alamo Ranch). Heimann, Johann Adee's brother, was present at that auction, and he unsuccessfully bid for the leasehold.

■ Heimann claims that he entered into a written lease contract with the Adees wherein they agreed to sublease [1] GS–1239 to him and his son for a term of six years. Heimann asserts that this agreement was executed on January 1, 1993 and that he paid

---

1. The sublease agreement purported to apply to all of the acreage of GS–1239. However, it was a sublease, rather than an assignment, because it did not transfer the entire remaining term of GS–

1239. *See Spears v. Canon de Carnue Land Grant,* 80 N.M. 766, 768, 461 P.2d 415, 417 (1969).

the Adees $52,320 (one year's rental) at that time. He also claims that he had been subleasing the subject grazing rights from the Adees for several years prior to 1993 pursuant to an oral agreement. There is a factual dispute over whether the Adees in fact ever previously sublet GS–1239 to the Heimanns pursuant to an oral lease. There is also a factual dispute about whether the Adees and the Heimanns actually executed the written lease agreement in January 1993. Appellees claim that the Heimanns and the Adees in fact executed the sublease documents in September 1993 following the dismissal of the Adees' bankruptcy petition.

On September 14, 1993, two months prior to the sheriff's sale, the Adees submitted to the Commissioner an application to sublet GS–1239 to the Heimanns. The Commissioner, however, took no action on the application until after the sheriff's sale. When he finally acted on the application in December 1993, the Commissioner took the position that the sheriff's sale was valid, and that the property therefore could not be sublet as requested. The Commissioner accordingly disapproved the request.

On November 12, 1993, one week prior to the sheriff's sale, Heimann filed with the State Land Office a petition contesting the sale of GS–1239. The Commissioner dismissed that claim without elaboration in an "order denying notice of contest." Heimann then filed the instant action, a de novo appeal, in the Harding County District Court.

While Heimann's appeal from the Commissioner's dismissal was pending in the Harding County District Court, Heimann attempted to intervene in *Reeves*, the Union County District Court proceeding. The Union County District Court denied the motion to intervene, filed nearly four months after the sheriff's sale, on the grounds that the motion was untimely and Heimann's property interest in the leasehold was not "sufficient to bring his claim of interest within [the purview of NMRA 1–024(A)(2) (1996) ]." In reaching the latter conclusion, the court reasoned that the Adees' purported sublease to Heimann was void because the Commissioner had never consented to that sublease.

Heimann subsequently moved for summary judgment in Harding County District Court. In his motion he asked that the sale of GS–1239 be declared void and that the Commissioner be ordered to set aside the assignment of GS–1239 to Alamo Ranch. Heimann sought to have the Harding County District Court vacate the execution sale on the ground that it failed to comply with various requirements applicable to real property. The Harding County District Court, however, declined to revisit the execution sale proceedings, concluding that Section 39–4–1 precluded it from doing so. The Harding County District Court entered a final order denying the motion for summary judgment, affirming the decision of the Commissioner, and dismissing Heimann's petition for declaratory judgment. The present appeal arises from that order.

## II. DISCUSSION

■ The parties have focussed research and argument in large part on the question whether GS–1239, the state grazing leasehold, is personal property or real property. The focus on whether under New Mexico law we classify a state grazing lease as realty or personalty arises in part from Heimann's arguments that a lien must exist before the sheriff may levy upon or sell real property pursuant to a writ of execution and that no lien existed in this case. Heimann also asserts that the leasehold's classification as realty or personalty is germane to the issue whether the sheriff's levy and sale complied with certain statutory requirements that are applicable to real estate. *See* NMSA 1978, §§ 39–4–4, 39–4–9, 39–5–5 (Repl.Pamp.1991).

Relying primarily upon statutory arguments, Heimann asserts that such a property interest constitutes real property. *See* NMSA 1978, § 39–5–1.2 (Repl.Pamp.1991); NMSA 1978, § 47–1–1 (Repl.Pamp.1995). On the other hand, Alamo Ranch relies on case law for the proposition that a state grazing leasehold is personal property. *See*

*American Mortgage Co. v. White,* 34 N.M. 602, 605, 287 P. 702, 703 (1930); *Resolution Trust Corp. v. Binford,* 114 N.M. 560, 567–70, 844 P.2d 810, 817–20 (1992). We conclude that the focus on classification of a state grazing leasehold as real or personal property is misplaced. We need not classify the property at issue in order to resolve the issues raised on appeal.

Heimann's argument that a lien must exist before a sheriff may levy upon and sell real property in the course of efforts to enforce a judgment is not quite accurate. He equates two supplementary proceedings that are in fact different. The two distinct remedies in question are execution in aid of a judgment and foreclosure on a lien. This Court recognized in *Armstrong v. Csurilla,* 112 N.M. 579, 589–591, 817 P.2d 1221, 1231–33 (1991), that these are distinct proceedings and that execution in aid of a judgment, no less than foreclosure of a lien, may affect a debtor's real property. *See* NMSA 1978, § 39–4–2 (Repl.Pamp.1991) (stating that execution shall be against the "goods, chattels *and lands*" of the judgment debtor (emphasis added)); *see also Crowell v. Kopp,* 26 N.M. 146, 150–52, 189 P. 652, 653–54 (1919) (recognizing the distinction between foreclosure of a lien, enforceable upon a specific item of property, and execution on a judgment, enforceable generally against the debtor's property), *overruling recognized, Abarca v. Henry L. Hanson, Inc.,* 106 N.M. 25, 26, 738 P.2d 519, 520 (Ct.App.) (noting that the New Mexico Supreme Court has overruled *Crowell* on other grounds), *cert. denied,* 106 N.M. 7, 738 P.2d 125 (1987).

Executions at common law were carried out "by the use of several distinct execution writs." 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 1.4, at 15 (2d ed. 1993). Each writ provided "for execution on a different sort of interest of the debtor." *Id.* at n. 1. "[F]oreclosure actions originated in equity and have

always been characterized as equitable actions." *Armstrong,* 112 N.M. at 590, 817 P.2d at 1232. Our statutes now provide for both sales on execution, by the sheriff, and foreclosure sales under the supervision of a court. *Id.* at 590–91, 817 P.2d at 1232–33.

■ The Union County proceeding involved execution in aid of a judgment. In these supplemental proceedings, neither the statute nor cases arising under the statute have required a preexisting lien.[2] We conclude a preexisting lien is not required, whether or not the property executed against constitutes realty or personalty. *Cf. Armstrong,* 112 N.M. at 589–91, 817 P.2d at 1231–33 (holding that statutory requirement that no real property shall be sold on execution by the sheriff for less than two-thirds of its appraised value is not applicable to a court-supervised foreclosure sale); *see generally* 1 Dan B. Dobbs, *Law of Remedies* § 1.4 (2d ed. 1993) (discussing the statutory base in modern law for execution to enforce judgments and the predecessor, traditional execution writs). Because the existence of a lien is not a prerequisite to the sheriff's levy and sale of real property, we need not classify the leasehold as realty or personalty in order to resolve the issues raised in this appeal regarding the existence of a lien.

For the reasons that follow, we also conclude that the Harding County District Court correctly construed Section 39–4–1, and we do not consider whether the sheriff's sale complied with Sections 39–4–4, 39–4–9, and 39–5–5.

*A. Applicability of Section 39–4–1*

Our execution statute, Section 39–4–1, dates back to the Kearny Code. The original statute provided: "The party in whose favor any judgment, order or decree in any court may be returned, shall have execution there-

2. However, technically, the sheriff creates a lien against an item of property when he or she levies against it. *See Robison v. Gumaer,* 43 Colo. 310, 95 P. 935, 935 (1908). This form of lien is distinct from that which is created when the creditor files a transcript of judgment with the

county clerk pursuant to NMSA 1978, § 39–1–7 (Repl.Pamp.1991). For a brief discussion of the distinction between these two types of liens, *see* 30 Am.Jur.2d *Executions and Enforcement of Judgments* § 44 (1994).

for in conformity to the order, judgment or decree." Kearny Code of Laws (1846), *Executions,* § 1 (codified as amended at § 39–4–1). In 1919 the Legislature amended this statute, retaining the original language but adding to it the following:

> Said execution may be issued to the sheriff of any county of the state, and levy and sale made in any county wherein the judgment debtor may have property subject to execution.
>
> The court where the judgment or decree was rendered shall have jurisdiction over all matters growing out of the levy or sale under any execution.

1919 N.M. Laws ch. 60, § 1. Apart from the 1919 amendment, the execution statute has remained unchanged to the present day. *See* § 39–4–1.

■ The Harding County District Court concluded that the language of Section 39–4–1 deprived it of jurisdiction to determine whether the sheriff properly levied against and sold the disputed leasehold pursuant to the writ of execution issued by the Union County District Court. Specifically, the court declined to review (1) whether the appraisal was properly conducted; (2) whether the sheriff gave proper notice of the sale; (3) whether the writ of execution was timely filed; and (4) whether the failure of the Farmers Home Administration to consent to the sale rendered it defective. On appeal, Heimann denies that this statute vests in the Union County District Court *exclusive* jurisdiction to review the sheriff's sale. He points out that the jurisdiction clause does not state that the court rendering the judgment shall have exclusive jurisdiction and that it thus has the effect of vesting concurrent jurisdiction in both courts.[3]

■ After considering the likely purposes underlying this clause, we hold that the jurisdiction clause does indeed vest exclusive jurisdiction over "matters growing out of the levy or sale under any execution" in the court rendering the judgment. Section 39–4–1. We note first that Heimann, in attacking the trial court's application of Section 39–4–1, makes no attempt to explain what other function the jurisdiction clause might serve. Moreover, we think that important principles of inter-court comity and finality provide sound legal bases for the Legislature's determination that the court rendering a judgment should have exclusive jurisdiction over matters relating to the execution of that judgment. As a practical matter, a judgment is of use to the prevailing party only to the extent that it may be enforced or executed. Thus, the ability to obtain relief from execution is, practically speaking, the ability to obtain relief from the judgment itself. We are persuaded that the framers of the 1919 amendment recognized that it would be inappropriate to have a district court reviewing proceedings ordered by another district court to execute the judgments of the latter. Such review should come, if at all, from an appropriate appellate court. Similar principles of judicial comity are incorporated in our state constitution. *See* N.M. Const. art. VI, § 13 (prohibiting one district court from enjoining or directing a writ to another district court).

This Court is not aware of any other state with a statutory provision similar to Section 39–4–1's jurisdiction clause. Nevertheless, case law in other states supports our determination of the significance of that clause. For example, in *Lloyds Alliance v. Cook,* 290 S.W.2d 716 (Tex.Civ.Ct.App.1956), the court considered the significance of a Texas statute that provided that "writs of injunction to stay execution on a judgment shall be returnable to and tried in the court where such judgment was rendered." *Id.* at 718. Concluding that this statute was not a mere venue statute, but was jurisdictional, the court said:

---

3. We note that NMSA 1978, § 38–3–1(D) (Repl. Pamp.1987), provides that venue is proper in the district court in the county where the land or any portion thereof is situate when the suit involves "lands or any interest in lands." We perceive no conflict between Sections 39–4–1 and 38–3–1, even if this suit did involve an interest in lands, a matter which we do not decide, because jurisdiction and venue are distinct legal concepts. *See Kalosha v. Novick,* 84 N.M. 502, 504, 505 P.2d 845, 847 (1973). If Section 39–4–1 vests jurisdiction over a particular matter in a single district court, then venue will not be an issue.

Its purpose is not the protection of the citizen in his ordinary right to be sued in the county of his domicile, but rather it is a law of comity, for the protection of the dignity of our courts. Orderly procedure and proper respect for the courts will require that such attacks upon their judgments should be made in the court rendering such judgment, rather than in other courts indiscriminately.

*Id.* (quoting *Switzer v. Smith,* 300 S.W. 31, 32 (1927)); *see also Commercial Bank of Okeechobee v. Proctor,* 349 So.2d 710, 712 (Fla.Ct. App.1977); *Borelli v. Conklin Limestone Co.,* 569 A.2d 8, 9 (R.I.1990).

Having concluded that Section 39–4–1 vests exclusive jurisdiction over "matters growing out of the levy or sale under any execution" in the court rendering the judgment, we will not attempt herein to define precisely the scope of the phrase "matters growing out of the levy or sale." We are satisfied, however, that any procedural irregularities in the sheriff's sale are within the purview of that clause. Heimann seeks review of only procedural irregularities under these statutes. We hold that the Harding County District Court properly concluded that it was precluded by Section 39–4–1 from reviewing the sheriff's sale for such claims of error.

*B. Whether the Commissioner Was an Indispensable Party to the Union County Proceedings*

█ We next consider a different jurisdictional argument. Heimann asserts that the Commissioner was indispensable to *Reeves,* and the Commissioner's absence as a party in that case deprived the Union County District Court of jurisdiction. He argues that the judgment in *Reeves* is therefore open to collateral attack. *See Hubbard v. Howell,* 94 N.M. 36, 38–39, 607 P.2d 123, 125–26 (1980) (holding that lack of subject matter or personal jurisdiction renders a judgment open to collateral attack); *Dent v. Pines,* 394 S.W.2d 266 (Tex.Ct.Civ.App.1965) (holding that execution proceedings may be enjoined by an-

other court where court rendering judgment lacked jurisdiction).

█ In order to succeed with this jurisdictional attack, Heimann must overcome a presumption that the Union County District Court had both subject matter and personal jurisdiction. *See Burton v. Castillo (In re Estate of Baca),* 95 N.M. 294, 296, 621 P.2d 511, 513 (1980). Furthermore, the "lack of jurisdiction [must appear] affirmatively on the face of the judgment or in the judgment roll or record, or [must be] made to appear in some other permissible manner." *Id.* Our review of the record leads us to the conclusion that Heimann has failed to carry this burden. Heimann relies upon *Swayze v. Bartlett,* 58 N.M. 504, 273 P.2d 367 (1954), for the proposition that the Commissioner was an indispensable party in *Reeves. See also State Game Comm'n v. Tackett,* 71 N.M. 400, 403, 379 P.2d 54, 56 (1962). *Swayze* held that the Commissioner of Public Lands is an indispensable party to a district court proceeding "[i]f the controversy involves a question concerning the legality of a state lease, the eligibility of the lessee thereunder, the matter of performance of the lease, reservations, if any, in the lease, or a matter of public policy requiring passage thereon by the commissioner." 58 N.M. at 510–11, 273 P.2d at 371. Heimann asserts that *Reeves* involved Alamo Ranch's eligibility to assume the lease, or alternatively, a matter of public policy (viz. whether a leasehold is personalty or realty) requiring the participation of the Commissioner.

█ An execution proceeding is auxiliary to the underlying lawsuit and is not a separate action. 30 Am.Jur.2d *Executions and Enforcement of Judgments* § 43 (1994). Nonetheless, an execution ordered to enforce a judgment does not form a part of the judgment. 1 A.C. Freeman, *A Treatise of the Law of Judgments* § 2, at 5 (5th ed., Edward W. Tuttle, ed., 1925). It follows that errors associated with the execution proceedings will not render the underlying judgment open to collateral attack. Heimann does not necessarily attack the Union County District

Court's jurisdiction over the underlying suit in *Reeves.* Rather, he seems to argue that the Commissioner's absence from the sheriff's levy and sale deprived the Union County District Court of jurisdiction over those proceedings. Even if we assume that a party's absence might deprive a court of jurisdiction over an execution proceeding, a matter that we do not decide, we nonetheless conclude that Heimann's argument on this point fails. First, we do not agree with Heimann that the Union County District Court in *Reeves* was necessarily required to address either the issue of the purchaser's eligibility or the question whether a state grazing lease is realty or personalty. Heimann does not alert us to a single instance in which the court made any finding or ruling regarding either issue. Nor do we agree that there was an implicit requirement that the court do so. As explained in the discussion above, the leasehold was subject to be sold at the sheriff's sale regardless of whether it was real property or personal property.

Moreover, Heimann's argument that the court was required to determine the purchaser's eligibility overstates the court's role in a sheriff's sale and blurs the distinction between such sales and foreclosure sales. The district court's role in an execution sale is narrower than its role in a foreclosure sale and normally ends with issuance of the writ of execution to the sheriff. One treatise explains that:

> a sale under execution ... is made by the sheriff as a ministerial officer, acting under the writ, and the court has no control over his actions, and, except in a few states, no confirmation of the sale by the court is necessary in order to validate the sale.... An execution sale is accordingly not, properly speaking, a judicial sale.

4 Herbert T. Tiffany, *The Law of Real Property* § 1241, at 1144 (3d ed. 1975); *see also* III *American Law of Property* § 13.2, at 488 (1952). This Court in *Armstrong* acknowledged the limited role that courts play in execution sales. 112 N.M. at 591, 817 P.2d at 1233. There we said: "[F]oreclosure sales are carried out under the supervision of a court, while execution sales are conducted simply by the sheriff, with no order of confirmation by a court required and no other occasion specified for judicial oversight." *Id.* We conclude that the Union County District Court did not—nor was it required to—determine either the purchaser's eligibility or the nature of a state grazing leasehold. Accordingly, the Commissioner was not a necessary party under *Swayze. See* 58 N.M. at 511, 273 P.2d at 371.

We reach the same conclusion if we apply the balancing test set forth in our joinder rule, NMRA 1–019(B) (1996). *See C.E. Alexander & Sons, Inc. v. DEC Int'l,* 112 N.M. 89, 91–93, 811 P.2d 899, 901–03 (1991) (analyzing under NMRA 1–019 a claim that an indispensable party's absence deprived the trial court of jurisdiction). NMRA 1–019 requires the court to join an absent party if:

> (1) in [that party's] absence complete relief cannot be accorded among those already parties; or

> (2) [the absent party] claims an interest ... and is so situated that the disposition of the action in his absence may:

> (a) ... impair or impede his ability to protect that interest; or

> (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.

Here the Commissioner, as amicus curiae, specifically disclaims any interest in the Union County execution proceedings. Moreover, there was little risk that any of the parties to that lawsuit would incur multiple or inconsistent obligations. While Heimann himself may have faced such a risk, Heimann was never a party to *Reeves.* We hold that Heimann has failed to carry his burden to demonstrate that the Union County District Court lacked jurisdiction over *Reeves* and the execution and sheriff's sale proceedings that arose out of that lawsuit. Accordingly, Heimann may not collaterally attack either the judgment of the Union County District

Court or the execution ordered by that court to enforce its judgment.

### C. Heimann's Attempt to Intervene in the Union County Proceedings

 The record indicates that Heimann was never a named party in *Reeves*, the Union County case. He attempted to intervene, but the Union County District Court denied his petition on the ground that it was untimely filed. He argues on appeal that this deprived him of his day in court and resulted in a deprivation of his property without due process of law. *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). He also seems to argue that his exclusion from the Union County case warranted review of that case by the Harding County District Court.

 These arguments need not detain us long. This is an appeal from the judgment of the Harding County District Court, not the Union County District Court. We will not consider whether the Union County District Court's denial of Heimann's petition to intervene denied him his day in court or violated his right to due process. Denial of the petition to intervene was a final, appealable order. *See Apodaca v. Town of Tome Land Grant*, 86 N.M. 132, 133, 520 P.2d 552, 553 (1974). Heimann did not take an appeal, and he has therefore waived his right to have an appellate court review that denial.

### D. The Appeal from the Judgment of the Land Commissioner

 The present case arose when Heimann filed a petition with the Commissioner pursuant to NMSA 1978, Section 19-7-64 (Repl.Pamp.1994). That statute provides:

Any person, association of persons or corporation claiming any right, title, interest or priority of claim, in or to any state lands, covered by any lease, contract, grant or any other instrument executed by the commissioner, shall have the right to initiate a contest before the commissioner who shall have the power to hear and deter-

mine same. The commissioner shall prescribe appropriate rules and regulations to govern the practice and procedure of such contests.

The Commissioner has, pursuant to this statute, promulgated State Land Office Rule 15 (1984), establishing procedural guidelines for the adjudication of such contests. Subsection 15.003 of Rule 15 provides:

If, upon consideration of the matters and things [set out] in the [claimant's] petition and an examination of the records, the Commissioner shall deem the petition to be sufficient to constitute a cause of contest, a notice of contest will be issued, and a certified copy thereof furnished the contestant or his attorney.

The petition that Heimann filed with the Commissioner included extensive factual and legal allegations and requested that the Commissioner provide the following relief: (1) declare the sheriff's sale void; (2) refuse to issue a new lease to Alamo Ranch; (3) declare that Heimann's sublease was proper; (4) declare that Heimann's rights were not affected by the execution sale; and (5) promulgate regulations governing the foreclosure of judicial liens on state leases. Apparently determining that Heimann's petition was not sufficient to constitute a notice of contest, the Commissioner declined to issue one. However, the Commissioner's rationale for deeming the petition insufficient is not apparent from the record. Indeed, his order denying notice of contest merely restates those claims; the order lacks findings and conclusions as well as rationale. However, Heimann took an appeal from the Commissioner's decision, and the Harding County District Court affirmed. In contrast to the Commissioner, the court did make limited findings and conclusions. From an examination of those findings and conclusions, we infer that the court determined that the Commissioner's action was proper because Heimann never had any legal interest in the disputed leasehold.

Heimann was entitled to have his claim adjudicated by the Commissioner, and he

was further entitled to have that decision reviewed by the district court. Part of our rationale for concluding that the Commissioner was not an indispensable party to the Union County proceedings was the limited nature of the district court's role in an execution sale. Further, we have concluded that certain procedural irregularities in the execution sale itself are not reviewable other than in Union County. Under these circumstances, the Legislature's provision of a right of contest provides not only an appropriate forum, but on these facts the last opportunity for review. In exercising his plenary authority over state lands, the Commissioner has promulgated rules regarding their leasing and subleasing. These rules are easily accessible and clear. The Legislature's provision of a right of contest recognizes the Commissioner's plenary authority and provides an administrative remedy.

■■■■ Because the Commissioner's order denying notice of contest merely restates Heimann's claims, it provides an inadequate basis for appellate review. However, we are unwilling to reverse either the Commissioner or the district court based upon these concerns. On appeal to the district court, the matter "shall be tried de novo and determined in said district court as other causes are therein tried and determined." NMSA 1978, § 19–7–68 (Repl.Pamp.1994). The district court did review Heimann's claim and detailed its findings in a final order. These actions provide an adequate basis for appellate review.

State Land Office Rule 8.006 clearly states that subleasing may only be made with the "prior written consent of the Commissioner," which may be obtained through written application. In addition, the application must be made by the current state lessee, not the prospective subtenant. In this case, approval was sought only after the writ of execution issued from the Union County District Court. It was not made, as it should have been, at the beginning of the proposed sublease. Additionally, Heimann, the prospective subtenant, made the application, not Adee, the state

lessee. Thus, as the Commissioner states in his amicus curiae brief, a cognizable application was never made.

■■■■ Had a cognizable application been made, and the sublease approved, Heimann's claim would still fail. State Land Office Rule 8.006(D) provides as follows: "No sublease term shall extend beyond the term of its base lease and lease assignment shall result in the automatic termination of any sublease." The sale of the lease at the sheriff's sale effected a lease assignment. Therefore, Heimann's interest in the sublease, had it been approved, would have terminated after the sale and the Commissioner's approval of the purchaser's lease. SLO 8.008 (1992). In light of the State Land Office rules, the contingency of termination upon involuntary sale needs to be protected against in the sublease itself.

Under State Land Office rules, Heimann's claim lacks merit. The district court did not err in affirming the Commissioner's administrative decision.

### E. The Declaratory Judgment Claim

■■■■ In addition to the appeal from the Commissioner's ruling, Heimann's pleading in the Harding County District Court sought declaratory relief in the form of declarations (1) that "the sale upon execution under these circumstances [is] void," and (2) of Heimann's "rights relative to the other parties' in this cause." This opinion forecloses any attack on the sheriff's sale, and thus any declaration that the sale was void. We also deny Heimann's claim for declaratory relief on the second issue regarding Heimann's rights relative to those of the other parties. Heimann did not rely on any claim other than to the lease, and we conclude that our disposition of his claim to the lease disposes of his declaratory judgment action as well as his appeal from the Commissioner's administrative determination.

### III. CONCLUSION

We affirm the district court's determination that Section 39–4–1 precluded it from

reviewing the proceedings associated with the sheriff's sale. We also conclude that the Union County District Court had jurisdiction over the subject matter and the parties in *Reeves*, and that neither the judgment nor the execution ordered to enforce that judgment are open to collateral attack. We affirm the trial court's affirmance of the Commissioner's administrative decision on the basis of State Land Office rules relative to Heimann's rights as a sublessee. For similar reasons, we affirm the decision dismissing Heimann's declaratory judgment claim.

**IT IS SO ORDERED.**

RANSOM, J., and ROBERT HAYES SCOTT, District Judge, sitting by designation, concur.