STATE OF MONTANA ex rel. JAMES NEPSTAD, Peti-
tioner and Respondent, v. RUSSELL L. DANIELSON, C.
L. DUFFY and ROY G. RILEY, the Sheriff of Big Horn
County, Montana, Respondents and Appellants.

No. 11139.
Submitted April 11, 1967. Decided May 12, 1967.
427 P.2d 689.

Honorable Forrest H. Anderson, Atty. Gen., Helena, Robert H. Wilson and Kenneth R. Neill, Hardin, Chadwick Smith, Sp. Asst. Atty. Gen. (argued), Helena, for appellants.

Lee Overfelt (argued), Billings, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from an order granting a writ of habeas corpus.

James Nepstad a non-Indian was arrested and charged with violating section 26-307, R.C.M.1947, by killing two bull elk on the Crow Indian Reservation during the closed season. The accused petitioned the district court of the thirteenth judicial district for a writ of habeas corpus on the theory that the State of Montana was without jurisdiction in this matter be-

cause the elk were killed on a Crow Indian Reservation located in southeastern Montana. The district court agreed with the petitioner and an order was entered April 12, 1966, granting the writ of habeas corpus releasing him from the custody of the Big Horn County Sheriff. The order contained the following statement "* * * It is elementary that all Indian lands within the State are under the absolute jurisdiction and control of the United States. (See the Enabling Act of Montana.) In any event, the Congress, by enacting the statute in question (Title 18, § 1165) on July 12, 1960, following the act of our Legislature in 1957, seems clearly to have pre-empted the field and left the jurisdiction to punish the petitioner, if he be guilty of any crime, in the courts of the United States * * *."

■■ It is well-settled that the United States Congress may exercise its powers to circumscribe the exercise of state police power by virtue of the Supremacy Clause of the United States Constitution. U.S.Const., Art. VI, Clause 2; Morris v. Jones, 329 U.S. 545, 91 L.Ed. 488, 67 S.Ct. 451, 168 A.L.R. 656. A state statute may be effectively "pre-empted" by an act of Congress directly inconsistent with the state statute or by a clear expression of an intention to exclusively occupy a limited field encompassing the state statute. Savage v. Jones, 225 U.S. 501, 32 S.Ct. 715, 56 L.Ed. 1182; Schwartz v. State of Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231.

■ Regulation of elk hunting within the borders of the State of Montana is clearly a proper exercise of the state's police power. Van Camp Sea Food Co. v. Department of Natural Resources of the State of California, 9 Cir., 30 F.2d 111, and cases cited; State v. Rathbone, 110 Mont. 225, 100 P.2d 86. Section 26-104, subd. (15), R.C.M.1947, authorizes the Fish and Game Commission to exercise the state's power with respect to setting seasons and fixing bag limits. Section 26-307, subd. (3), R.C.M.1947, provides that it is a misdemeanor to hunt game animals during a closed season.

The first question presented in this appeal is whether Con-

gress has pre-empted all state regulation of fish and game on Indian reservations by enacting conflicting legislation. Section 1165 of Title 18, United States Code was the only federal statute cited as inconsistent and reads as follows:

"Whoever, without lawful authority or permission, willfully and knowingly goes upon any land that belongs to any Indian or Indian tribe, band, or group and either are held by the United States in trust or are subject to a restriction against alienation imposed by the United States, or upon any lands of the United States that are reserved for Indian use, for the purpose of hunting, trapping, or fishing thereon, or for the removal of game, peltries, or fish therefrom, shall be fined not more than $200 or imprisoned not more than ninety days, or both, and all game, fish, and peltries in his possession shall be forfeited." P.L. 86-634, § 2, 74 Stat. 469.

*It is significant to note that section 1165 does not directly prohibit hunting and fishing but makes the act of going upon the Indian reservation a violation if done for the purpose of hunting or fishing.* Section 1165 expressly permits hunting and fishing on Indian reservations without additional federal regulation if proper permission or authorization is given for the entry. Therefore, section 1165 must be considered to be a statute providing a penalty for trespass to an Indian reservation and not an attempt by Congress to enter the field of fish and game regulation. This construction is fortified by the section preceding section 1165 wherein a penalty is provided for the destruction of boundary signs erected by Indian tribes to give notice that hunting, trapping, and fishing on the reservation is not permitted without lawful authority or permission. Title 18, § 1164 U.S.C. We hold that a statute which provides a penalty for trespass to the possessory rights of reservation Indians does not conflict with fish and game regulation by the State of Montana.

Nothing has been advanced to this court to show that Congress has expressed an intention to occupy the field of fish and

game management on Indian reservations, nor would we concede that it could. A contrary general policy was noted in Organized Village of Kake v. Egan, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573. In the Kake case the United States Supreme Court demonstrated by historical discussion a continuing tendency to relax federal regulation over Indian affairs by permitting more tribal self-government. A concurrent increase of the influence of state law on Indian reservations was also noted.

The fact that it is possible to violate section 1165 and Montana fish and game regulations by the same act or acts does not require the conclusion that there is a conflict between state and federal law. It has long been recognized that under our system of dual sovereignty a single act may constitutionally constitute a crime against both sovereigns. Bartkus v. People of State of Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684; Abbate v. U. S., 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729.

Since Congress has not acted to exclude all state regulation of fish and game on Indian reservations the only remaining question is whether the state's regulatory power extends to a person who is not a tribal Indian hunting upon the reservation. This question is a subdivision of the larger question of whether the police power of the state may be extended to persons on Indian reservations who are not tribal Indians. In this connection respondent Nepstad contends in his brief that the State of Montana is precluded from exercising any regulatory power over persons on Indian reservations by section 4, second part, of its own Enabling Act which reads as follows:

"Second. That the people inhabiting said proposed (State of Montana) do agree and declare that they forever disclaim all right and title * * * to all lands lying within the said limits owned or held by any Indian or Indian tribes; * * * and said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States * * *."

The effect of the above-quoted portion of the Montana

Enabling Act was considered in Draper v. United States, 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419, upon an appeal from a conviction of murder alleged to have been committed on an Indian reservation situated within the boundaries of the State of Montana. The Draper case followed an earlier U. S. Supreme Court decision by holding that the retention of "absolute jurisdiction and control" over Indian lands did not deprive the State of Montana of jurisdiction over crimes committed on reservations by other than Indians or against Indians. In Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251, the United States Supreme Court declared that absent governing acts of Congress the test of the applicability of state law on Indian reservations is whether such application would interfere with reservation self-government. The most recent statement on this question appears in the Kake Village case, supra, at 369 U.S. 71, at 82 S.Ct. 568: "The Senate amendment was designed simply to make clear what an examination of past statutes and decisions makes clear also: that the words 'absolute jurisdiction and control' are not intended to oust the State completely from regulation of Indian 'property (including fishing rights)'. 'Absolute' in § 4 carried the gloss of its predecessor statutes, meaning undiminished, not exclusive."

From the foregoing we conclude that the State of Montana has jurisdiction to enforce its fish and game regulations on Indian reservations contained within its boundaries with respect to persons who are not tribal Indians unless precluded from doing so by an act of Congress or unless such enforcement would interfere with self-government on the reservation. We have already discussed the absence of prohibiting or conflicting acts of Congress. Further, no convincing argument has been made to show how enforcement of state hunting and fishing regulations against a non-Indian would in any manner interfere with self-government of the reservation. Therefore, we hold that the district court erred when it decided that state courts have no jurisdiction over non-Indians, particularly the respondent.

The order granting the writ is reversed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON concur.