503 P.2d 323

**SANGRE DE CRISTO DEVELOPMENT CORPORATION, INC., Plaintiff-Appellee,**

v.

**CITY OF SANTA FE and Board of County Commissioners of Santa Fe County, New Mexico, Defendants-Appellants.**

**No. 9441.**

Supreme Court of New Mexico.

Nov. 22, 1972.

Harry S. Connelly, Jr., Special Asst. City Atty., Santa Fe, for City of Santa Fe.

John Wentworth, Deputy Dist. Atty., Santa Fe, for Board of County Commissioners.

James B. Alley, Jr., Santa Fe, on Rehearing for appellants.

Olmsted, Cohen & Bingaman, Standley, Witt & Quinn, Kegel & McCulloh, Santa Fe, for appellee.

PER CURIAM.

The opinion issued in this cause on September 22, 1972, is withdrawn and the following opinion substituted therefor. The Motions for Rehearing are otherwise denied.

OPINION

OMAN, Justice.

Sangre de Cristo Development Corporation, Inc., hereinafter called plaintiff, sought an injunction against defendants, the City of Santa Fe and the Board of County Commissioners of Santa Fe County. Each defendant filed a counterclaim by which it sought an injunction against plaintiff. The City also filed a separate suit against plaintiff in the same court the day after plaintiff's suit was filed. In this suit by the City it also sought an injunction against plaintiff. The Chief Justice of this Court designated the same trial judge to preside over both cases.

A judgment was entered in the cause filed by plaintiff by which defendants were permanently enjoined and restrained from exercising over lands in the Pueblo of Tesuque all platting and planning authority and subdivision control conferred upon defendants by §§ 14–18–1 through 14–20–24, N.M.S.A.1953 (Repl.Vol. 3, 1968) and §§ 70–3–1 through 9, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1971). No ruling by the trial court was made upon the defendants' counterclaims, except to the extent that it can be said the judgment granting the plaintiff an injunction was inconsistent with the claims of defendants for injunctive relief against plaintiff.

In the cause filed by the City against plaintiff, an Order of Dismissal was entered for the recited reason that "[a]ll matters herein having been disposed of in cause #43,218 [the suit filed by plaintiff] the above cause [#43,223] is hereby dismissed."

Appeals were taken by defendants from the judgment and an appeal was taken by the City from the Order of Dismissal. However, at no time in the briefs, except for references thereto in the "Statement of the Causes" and the "Statement of Proceedings" in their brief in chief, is any reference made by the defendants to the Order of Dismissal. No error is claimed on the part of the trial court in entering this order, no argument is directed against the substance of the order or the action of the trial court in entering it, and defendants in their brief in chief urged that " * * * the District Court's Judgment should be reversed and a Judgment granting the relief sought by Appellants [defendants] against Appellee [plaintiff] in the District Court should be entered by the District Court."

The one point relied upon for reversal by defendants, which in any way relates to their claims of right to injunctive relief against plaintiff, is stated by them as follows:

"POINT IV

"THE DISTRICT COURT SHOULD HAVE GRANTED A PERMANENT INJUNCTION TO APPELLANTS, RESTRAINING APPELLEE FROM FURTHER VIOLATING SECTIONS 14–19–1 ET SEQ., NMSA 1953 COMP., AND SHOULD HAVE GRANTED TO APPELLANT, COUNTY OF SANTA FE, A PERMANENT INJUNCTION RESTRAINING APPELLEE FROM FURTHER VIOLATING SECTION 70–3–1 THROUGH 70–3–9, AS AMENDED, NMSA 1953 COMP."

In their argument under this point, their claim is that they were entitled to injunctions under a Stipulation of Facts which was filed in the suit brought by plaintiff and in which the judgment enjoining defendants was entered. Obviously defendants had to be relying on their counterclaims in the plaintiff's suit as the basis for their Point IV, and not on the City's complaint in the other cause, or on the Order of Dismissal entered therein. The County was not a party to the suit brought by the City.

If the City intended to claim error on the part of the trial court in entering the Order of Dismissal, it was the City's duty to clearly assert this claim [Morris v. Merchant, 77 N.M. 411, 423 P.2d 606 (1967); Cochran v. Gordon, 77 N.M. 358, 423 P.2d 43 (1967); Novak v. Dow, 82 N.M. 30, 474 P.2d 712 (Ct.App.1970)], and then to present argument and authority in support thereof [Sproule Const. Co. v. St. Paul Fire & Marine Ins. Co., 74 N.M. 189, 392 P.2d 339 (1964); Gibbs v. Whelan, 56 N.M. 38, 239 P.2d 727 (1952); Spain Management Co. v. Packs' Auto Sales, 54 N.M. 64, 213 P.2d 433 (1950); Wilson v. Albuquerque Board of Realtors, 82 N.M. 717, 487 P.2d 145 (Ct.App.1971); Novak v. Dow, supra]. This the City failed to do. Thus, neither the Order of Dismissal nor the cause in which the order was entered is before us on this appeal.

We reverse the judgment by which defendants were enjoined and restrained. We do so on the jurisdictional issue of governmental immunity raised by defendants. This issue of governmental immunity arises from the fact that plaintiff sued defendants as governmental entities. The councilmen and commissioners of defendants were not sued as individuals.

We also feel constrained to decide the principal issue involved in this case, to wit, the right of defendants to exercise planning and platting authority and subdivision control over lands lying within the Pueblo of Tesuque. We decide this issue because of its great public importance; because this issue was fully briefed and argued by both sides on this appeal; and because defendants have expressly urged in their Point IV, supra, and in their arguments thereunder, as well as in their arguments under other points relied upon by them for reversal, that we resolve this issue. The jurisdictional question of governmental immunity is not applicable and has not been raised in relation to the claims asserted by defendants against plaintiff in their counterclaims.

It is true defendants have taken the position in their motions for rehearing that this issue should not have been decided by us, but this position is completely inconsistent with the position they took in their brief in chief, their reply brief, and their oral arguments, except for the fact that they wanted the issue resolved in their favor.

■ We affirm the trial court's implied refusal to grant the defendants' counterclaims for injunction against Sangre de Cristo. These counterclaims remain before this court for determination even though the original claim by Sangre de Cristo fails on jurisdictional grounds. As stated in Manufacturers Cas. Ins. Co. v. Arapahoe Drilling Co., 267 F.2d 5 (10th Cir. 1959):

"* * * [I]t is apparent in those exceptional cases where a counterclaim may survive the jurisdictional failure of a complaint that at least three premises must exist. Jurisdiction must exist within the scope of the allegations of the counterclaim; the claim made in the counterclaim must be independent of that made in the main case; and, lastly, affirmative relief must be sought."

All of these premises exist in the present case.

■ Defendants contend the district court lacked jurisdiction over them to grant the injunctive relief sought by plaintiff, because of their governmental immunity from suit as political subdivisions of the State. Neither of them nor the State has given permission or consent for this suit against them. Regardless of what may be the law in other states, this Court has consistently held the State of New Mexico may not be sued in its courts without its permission or consent. Nevares v. State Armory Board, 81 N.M. 268, 466 P.2d 114 (1969); State v. Burks, 75 N.M. 19, 399 P.2d 920 (1965); State v. Town of Grants, 69 N.M. 145, 364 P.2d 853 (1961); Maes v. Old Lincoln County Memorial Commission, 64 N.M. 475, 330 P.2d 556 (1958); Livingston v. Regents of New Mexico Col. of A. & M. A., 64 N.M. 306, 328 P.2d 78 (1958); Swayze v. Bartlett, 58 N.M. 504, 273 P.2d 367 (1954); Day v. Penitentiary of New Mexico, 58 N.M. 391, 271 P.2d 831 (1954); Hathaway v. New Mexico State Police, 57 N.M. 747 (on reh. 758), 263 P.2d 690 (1953); Vigil v. Penitentiary of New Mexico, 52 N.M. 224, 195 P.2d 1014 (1948); Arnold v. State, 48 N.M. 596, 154 P.2d 257 (1944); New Mexico State Highway Department v. Bible, 38 N.M. 372, 34 P.2d 295 (1934); Dougherty v. Vidal, 37 N.M. 256, 21 P.2d 90 (1933); State ex rel. Evans v. Field, 27 N.M. 384, 201 P. 1059 (1921). See also McWhorter v. Board of Education, 63 N.M. 421, 320 P.2d 1025 (1958); State v. District Court of Fourth Judicial Dist., 51 N.M. 297, 183 P.2d 607 (1947); Am. Trust & Sav. Bnk. of Alb. v. Scobee et al., 29 N.M. 436, 224 P. 788 (1924); Locke v. Trustees of New Mex. Reform School, 23 N.M. 487, 169 P. 304 (1917).

Also in New Mexico, municipalities, such as the City of Santa Fe, are clothed with this immunity from suit, insofar as their governmental functions are concerned. Montoya v. City of Albuquerque, 82 N.M. 90, 476 P.2d 60 (1970); Hammell v. City of Albuquerque, 63 N.M. 374, 320 P.2d 384 (1958). See also McWhorter v. Board of Education, supra; Barker v. City of Santa Fe, 47 N.M. 85, 136 P.2d 480 (1943). This is also true as to counties. Elliott v. Lea County, 58 N.M. 147, 267 P.2d 131 (1954); Murray v. County Commissioners, 28 N.M. 309, 210 P. 1067 (1922).

A reference to the foregoing cited cases shows that in New Mexico the doctrine of governmental immunity has not only been adhered to in tort cases or in cases in which there is likely to be a direct and adverse effect upon the public treasury, but in other types of cases as well.

This Court has also repeatedly held that if any change in this policy of immunity from suit is desired by the people of this State, this change can and should be accomplished through legislative action. Montoya v. City of Albuquerque, supra; Clark v. Ruidoso-Hondo Valley Hospital, 72 N.M. 9, 380 P.2d 168 (1963); State v. Town of Grants, supra; City of Albuquerque v. Campbell, 68 N.M. 75, 358 P.2d 698 (1960); Livingston v. Regents of New Mexico Col. of A. & M. A., supra; Elliott v. Lea County, supra.

Plaintiff seeks to avoid the effect of the decisions in these many cases. It predicates this effort in part upon the fact that a county was held subject to suit in Donalson v. San Miguel County, 1 N.M. 263 (1859), and reference was made to that case in Wylie Bros. C. C. v. Albuquerque-Bernalillo C.A.C.B., 80 N.M. 633, 459 P.2d 159 (Ct.App.1969). The decision in the Donalson case was clearly predicated upon the court's construction of a territorial statute that the county could sue or be sued. In the opinion it is stated: "It must be conceded, that upon known legal principles, no county can sue or be sued, unless such

proceeding shall be authorized by the legislative authority within the state or territory. * * * *"

As already stated, there is no legislative authority supporting plaintiff's suit against the defendants.

The mere reference to the Donalson case in the Wylie decision in no way supports plaintiff's contention that a county may sue or be sued absent legislative authority. Nothing said in Allen v. McClellan, 77 N.M. 801, 427 P.2d 677 (1967), can properly be construed as supporting plaintiff's position.

Plaintiff's contention that defendants waived their right to assert sovereign immunity is not supported by the record. In any event, they could properly have raised it for the first time in this Court. Maes v. Old Lincoln County Memorial Commission, supra.

Plaintiff further contends this is a jurisdictional question [Maes v. Old Lincoln County Memorial Commission, supra]; a jurisdictional question must be raised and considered by this Court on its own motion, if the parties fail to raise it; and, since we reversed the trial court on the merits of the case and not on jurisdictional grounds in Your Food Stores, Inc. (NSL) v. Village of Espanola, 68 N.M. 327, 361 P. 2d 950 (1961), there follows logically the conclusion that this Court in Your Food Stores decided a municipality may properly be sued and enjoined from performing governmental functions without legislative authority or consent for the suit. There is little merit to this argument. In a case in which the jurisdictional question is not raised by the parties or by the appellate court itself, it is presumed the appellate court decided the jurisdictional question and this decision becomes the law of the case. However, this appears to be the total effect of deciding a case in which jurisdiction is lacking but overlooked on appeal. Varney v. Taylor, 79 N.M. 652, 448 P.2d 164 (1968).

This Court, by mere inference or presumption, cannot logically be considered to have overruled the long line of cases,

supra, which have expressly dealt with the subject of sovereign immunity. The general rule is that cases are not authority for propositions not considered. McDowell and Craig v. City of Santa Fe Springs, 54 Cal.2d 33, 4 Cal.Rptr. 176, 351 P.2d 344 (1960), and cases cited therein. See also Miller v. DeWitt, 59 Ill.App.2d 38, 208 N.E. 2d 249 (1965). Likewise, the United States Supreme Court has long held that it " * * is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed *sub silentio.*" United States v. Tucker Truck Lines, 344 U.S. 33, 38, 73 S.Ct. 67, 69, 97 L.Ed. 54, 59 (1952), and cases cited therein.

This Court has adhered to the "right or wrong" rule as stated in Varney v. Taylor, supra. See also Sanchez v. Torres, 38 N.M. 556, 37 P.2d 805 (1934). In the Varney case, it was stated: " * * * [W]hat amounts in effect to an adjudication of the issue on a *prior* appeal, right or wrong, has become the law of the case, and is binding alike upon us and the litigants in *all subsequent proceedings in the case. * * *"* [Emphasis added]. Thus, the clear indication is that the "law of the case" or "right or wrong" doctrine is binding only on those persons who were parties or privies to that particular action. It is merely an aspect of the doctrine of res judicata. See Freeman on Judgments, § 709 at 1496–1497 (1925). See also Treinies v. Sunshine Min. Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939). Following this rationale, in ruling expressly on the effect of the failure of the parties to raise the defense of governmental immunity on appeal and the silence of this Court on that issue in a prior case, it was held:

"Appellee calls attention to the case of Scofield v. Lordsburg Municipal School District, 53 N.M. 249, 205 P.2d 834, wherein the court affirmed the lower court's award of compensation to an employee of a school district who was injured while performing extrahazardous work. The question of consent to the suit was not raised and therefore not treated by the court. Silence on a point not raised in that case is of no aid to the appellee here."

McWhorter v. Board of Education, supra.

Since there is no statute authorizing the plaintiff to sue defendants in the case now before us, and since the functions which defendants claim they have the authority to exercise over the land are governmental rather than corporate, it appears clear from the New Mexico law, as set forth in the foregoing cited cases, that the trial court erred in rejecting the defense of sovereign immunity asserted by each of the defendants.

We turn now to the defendants' counterclaims for injunctions against the plaintiff. These injunctions may only be granted if the City and County have planning and platting authority and subdivision control over Indian lands lying within an Indian Pueblo. The question now before us is whether they have those powers.

The facts of this case are largely before us by stipulation. The lands in question belong to the Pueblo of Tesuque—an Indian Tribe recognized by the United States Department of Interior—and are a portion of the lands which lie within the Pueblo. They also lie within the exterior boundaries of Santa Fe County, and a substantial portion thereof lie within five miles of the municipal limits of the City of Santa Fe.

The Pueblo acquired title to the land by a patent from the United States of America dated November 1, 1864. This patent was issued pursuant to an Act of Congress approved December 22, 1858, and entitled "An Act to confirm the Land Claim of certain Pueblos and Towns in the Territory of New Mexico." (11 Stat. 374).

The Pueblo leased these lands to plaintiff, a New Mexico corporation, for a period of 99 years. This lease was dated April 17, 1970, and was approved by the Albuquerque Area Director of the Bureau of Indian Affairs of the United States Department of Interior on May 24, 1970, pursuant to 25 U.S.C. § 415.

Pursuant to the lease, plaintiff prepared a master subdivision plan for use of the land. This plan was approved by the Secretary of the Interior and by the Pueblo on or before December 14, 1970. Plaintiff also prepared a subdivision plat of that portion of the land lying closest to the limits of the City of Santa Fe. This plat was also approved by the Secretary of the Interior and by the Pueblo on or before December 14, 1970. According to this plat, plaintiff proposed to subdivide that portion of the land shown thereon into more than 25 parcels, tracts or lots of less than five acres each, which it proposed and proposes to sublease to others for building purposes. In fact, during the year 1970, but subsequent to the entry by the district court of the Temporary Restraining Order directed against defendants, plaintiff subleased not less than 100 of these parcels, tracts or lots to others by reference to and exhibition of said plat without ever submitting the plat to or obtaining the approval thereof from either defendant.

The defendant City is a municipal corporation and a political subdivision of the State of New Mexico, and has a population of more than 25,000 persons. It claims planning, platting and zoning authority over those lands lying within five miles of its municipal boundary by reason of §§ 14–18–1 through 14–20–24, supra, and has instructed its attorney to seek an injunction against the activities of plaintiff in platting, planning and subleasing the lands in question as aforesaid.

The defendant County claims platting and subdivision control over the lands in question pursuant to the provisions of §§ 70–3–1 through 9, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1971).

Defendants contend Art. XXI, § 2 of the New Mexico Constitution does not preclude the applicability to the lands of valid State laws requiring platting and planning approval by defendants. We agree, but we are of the opinion that Congress has taken over the subdivision, platting and planning control of these lands so fully and completely that no room remains for the application of State laws imposing additional and inconsistent subdivision, platting and planning control.

Regardless of what may have been the historical attitude toward and the development of the legal status of the Pueblo Indians and their Pueblo lands in New Mexico, the Congress and the Supreme Court of the United States, about the time New Mexico became a State, largely changed this attitude and status and considered the legal status of Pueblo Indians and their lands as being identical with that of the peoples of recognized Indian Tribes and their reservation lands, except where treaties or special Congressional Acts were applicable. See the following authorities as to the early law concerning Pueblo Indians and their lands: United States v. Joseph, 94 U.S. 614, 24 L.Ed. 295 (1876); United States v. Lucero, 1 N.M. 422 (1869); United States v. Santistevan, 1 N.M. 583 (1874); United States v. Varela, 1 N.M. 593 (1874); Territory v. Delinquent Taxpayers, 12 N.M. 139, 76 P. 307 (1904); United States v. Mares, 14 N.M. 1, 88 P. 1128 (1907); Cohen, Handbook of Federal Indian Law at 383, 384, 387, 388 (1942). Note the changed views accomplished by and recognized in United States v. Sandoval, 231 U.S. 28, 34 S.Ct. 1, 58 L.Ed. 107 (1913); United States v. Candelaria, 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023 (1926); Art. XXI, § 2, Constitution of New Mexico. See also Cohen, Handbook of Federal Indian Law at 389.

There no longer remained any doubt about Pueblo Indians being Tribes, Pueblo lands being Indian Country, and Pueblo Indians being wards of the United States of America occupying a special status of tutelage. United States v. Chavez, 290 U.S. 357, 54 S.Ct. 217, 78 L.Ed. 360 (1933). The United States, through Congress, if it so elected, could exert total governmental control over Indian Country, and this it has done in varying degrees at different times in different areas of Indian Country and in different areas of governmental control.

Under the concepts announced in Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832), which were relied on to a considerable extent in Your Food Stores, Inc. (NSL) v. Village of Espanola, supra, title to Indian Country meant more than title within the ordinary proprietary concepts of our law of real property. Rather, it meant all aspects of sovereign governmental control. These concepts—of Indians being foreign people and Indian Country being a foreign land—are totally inconsistent with the citizenship of Indians in the United States and in the various states in which they reside and with the inclusion of their lands within and as a part of the territory of the United States and of the states in which they lie. New Mexico Indians, as are Alaska Indians, are voting citizens and some of them occupy prominent public offices in state and local governments. Metlakatla Indians v. Egan, 369 U.S. 45, 82 S.Ct. 552, 7 L.Ed.2d 562 (1962); Montoya v. Bolack, 70 N.M. 196, 372 P.2d 387 (1962). There are at least two Indian members of our present New Mexico Legislature; under Rule 16 of our Rules of Criminal Procedure, Indian Tribal and Pueblo law enforcement officers have equal authority with full-time salaried State or county law enforcement officers, municipal police officers and campus security officers to serve arrest warrants; at least two Indians served as New Mexico delegates to the recently held National Republican Convention; a prominent Indian recently served as Chairman of the New Mexico Judicial Council; the author hereof has served with two prominent Indians on the New Mexico Judicial Standards Commission; and Indians are serving and have served in local and State governments in New Mexico in many capacities.

What effect did the disclaimer in Art. XXI, § 2, supra, have on New Mexico's right to exercise governmental power and control over Indian Country? The disclaimer, insofar as here involved, clearly concerns itself with and relates to " * * * all right and title to * * * all lands lying within said boundaries [State of New Mexico] owned or held by any Indian or Indian tribes, the right or title to which shall have been acquired through the United States, or any prior sovereignty; * * * "

■ The disclaimer in our Constitution of right and title to Indian lands is a disclaimer of proprietary interest therein and control thereover, and not a disclaimer of governmental control. Kake Village v. Egan, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962); Paiz v. Hughes, 76 N.M. 562, 417 P.2d 51 (1966); Batchelor v. Charley, 74 N.M. 717, 398 P.2d 49 (1965); State v. Warner, 71 N.M. 418, 379 P.2d 66 (1963); Montoya v. Bolack, supra; Ghahate v. Bureau of Revenue, 80 N.M. 98, 451 P.2d 1002 (Ct.App.1969). See also County of Beltrami v. County of Hennepin, 264 Minn. 406, 119 N.W.2d 25 (1963); State v. Danielson, 149 Mont. 438, 427 P.2d 689 (1967); Fournier v. Roed, 161 N.W.2d 458 (N.D.1968); McClanahan v. State Tax Commission, 14 Ariz.App. 452, 484 P.2d 221 (1971). As already stated above, defendants are not seeking to assert corporate or proprietary authority over the lands in question, but rather, governmental authority. Thus, the constitutional disclaimer in Art. XXI, § 2, supra, presents no obstacle to the exercise by defendants of the authority they claim.

■ However, defendants may not exercise their claimed authority over the lands if they would thereby interfere with the self-government of the Tesuque Pueblo or impair a right granted, reserved or preempted by Congress. Kake Village v. Egan, supra; Warren Trading Post v. Tax Comm'n., 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965); Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); State v. Danielson, supra; Paiz v. Hughes, supra; McClanahan v. State Tax Commission, supra; Ghahate v. Bureau of Revenue, supra. Since defendants seek to impose their claimed authority only over lands leased by the Pueblo for 99 years to plaintiff, and only for the purpose of controlling the platting, planning and subdivision activities of plaintiff, we are unable to see how the exercise by defendants of this

authority would interfere with the self-government of the Tesuque Pueblo. Compare Oklahoma Tax Comm'n. v. Texas Co., 336 U.S. 342, 69 S.Ct. 561, 93 L.Ed. 721 (1949); Thomas v. Gay, 169 U.S. 264, 18 S.Ct. 340, 42 L.Ed. 740 (1898); State v. Danielson, supra; Paiz v. Hughes, supra; Montoya v. Bolack, supra; Fournier v. Roed, supra; McClanahan v. State Tax Commission, supra; United States v. Erie County, N.Y., 31 F.Supp. 57 (W.D.N.Y. 1939). There is no evidence in the record which would support a finding that the exercise by defendants of their claimed subdivision, planning and platting authority over the lands would interfere with the self-government of the Pueblo, and no such finding was made by the trial court.

■ However, in our judgment, the exercise of this authority by defendants would conflict with the subdivision, planning and platting authority over these lands which the United States has preempted or reserved unto itself. By the 1968 amendment to 25 U.S.C. § 415, Congress provided that the lands of the Pueblo of Tesuque might be leased for a term not to exceed 99 years subject to " * * * the approval of the Secretary of the Interior * * * [and] * * * under such terms and regulations as may be prescribed by the Secretary of the Interior. * * * ." By the 1970 amendment to 25 U.S.C. § 415, Congress added to this leasing act the following provision:

" * * * * Prior to approval of any lease or extension of an existing lease pursuant to this section, the Secretary of the Interior shall first satisfy himself that adequate consideration has been given to the relationship between the use of the leased lands and the use of neighboring lands; the height, quality, and safety of any structures or other facilities to be constructed on such lands; the availability of police and fire pro-tection and other services; the availability of judicial forums for all criminal and civil causes arising on the leased lands; and the effect on the environment of the uses to which the leased lands will be subject."

Pursuant to the rule-making power vested by Congress in the Secretary, who has promulgated comprehensive rules and regulations which appear in 25 C.F.R., and particularly in pts. 1.4 and 131, it is obvious to us that Congress intended to and has accomplished by its enactments and the extensive and all-inclusive regulations promulgated pursuant thereto, a preemption by or a reservation in the United States of all control over the leasing of Indian lands, and this includes the subdivision, planning and platting of these lands for the uses to be made thereof during the term of the leasehold. Under these circumstances there is no room for the State or its political subdivisions to impose additional or conflicting controls relating to the subdivision, planning or platting of the lands. Warren Trading Post v. Tax Comm'n., supra. It is for Congress to decide when and to what extent the states and the political subdivisions thereof may exercise subdivision, planning and platting control over Indian lands leased pursuant to 25 U.S.C. § 415, supra, and the regulations of the Secretary of the Interior promulgated under the authority granted him by Congress. See Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903).

It follows from what has been said that the judgment of the trial court should be reversed for lack of jurisdiction over defendants and this cause remanded to the trial court for whatever action is required to comply with this decision.

It is so ordered.

McMANUS and STEPHENSON, JJ., concur.